Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non-Prisoner)

# IN THE UNITED STATES DISTRICT COURT
for the

## District of North Dakota

Eastern Division

| | |
|---|---|
| **Sarai Hannah Ajai** | |
| *Plaintiff.* | Case No. _____ |
| **v.** | *(to be filled in by the Clerk's Office)* |
| **North Dakota Department of Transportation,** | |
| **The United States Postal Service, Office of Inspector General,** | |
| **Doe ET AL.,** | Jury Trial: *(check one)* ☐ Yes ☒ No |
| *Defendant(s).* | |

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

(Non-Prisoner Complaint)

### I. Jurisdiction.

1. This is a claim for continuous violations of the Plaintiff's civil rights under the Fourth, Fifth, Sixth, Eighth, Thirteenth, and Fourteenth Amendments, as protected by the Constitution and law of the United States are pursuant to the Title 42 U.S.C. §§ 1981, 1983, 1985 and 1986 for an injunctive relief and damages in a civil cause of actions against the Defendants. The court has jurisdiction under the Title 28 U.S.C. § 1343 based on Title 42 U.S.C. §§ 1981, 1983, 1985 and 1986 including these Federal questions arises under the Title 28 U.S.C. § 1331 for a scientific constitutional law applications and reviews. The court jurisdiction exists under the Permanent and/or Declaratory Judgment Act under the Title 28 U.S.C. § 2201 (a) and 2202. And, the Supplement jurisdiction over the Plaintiff's state law claims is pursuant to the Title 28 U.S.C. § 1367.

2. Venue is proper in the District of North Dakota, Eastern Division under the Title 28 U.S.C. §

1391 (b) because:

  (b)(1)  all Defendants are residents of the state in which, the district is located;

  (b)(2)  the events or omissions giving rise to these claims occurred in this District and, the Defendants conduct business in this District; or

  (b)(3)  if neither (b)(1) nor (b)(2) provides the appropriate venue than the venue is appropriate wherever there are personal jurisdictions over the Defendants.

**The Plaintiff's civil cause of actions arises under:**

1. the Fourth Amendment revealed, absence of the Plaintiff guarantee protection rights to be secure in: as her own person, houses or apartments, papers and effects against unreasonable searches and seizures have been infringed upon.

2. The Fifth Amendment reveals that the Plaintiff's rights to life, liberty, and property must not be infringed upon without due process of law nor shall the Plaintiff property cannot be taken, appropriated or replicated for public uses, without just compensation.

3. the Sixth Amendment revealed, absence of the Plaintiff rights to be informed of the nature and cause of the accusations and to be confronted with the witnesses against her have been denied.

4. the Eighth Amendment revealed, the Defendants have been granted authority to employ deceptive methods, schemes, and manipulations of the Plaintiff's photographs, Personal Identifiable Information (PII), DNA definitions and/or forged signatures onto "Gender Designation" change forms to evaluate and alter the Plaintiff biological female birth sex and gender identity profiles within a governmental and non-governmental agencies database systems. Through negligent, false, and fraudulent misrepresentations' statements, the Defendants intentionally and inaccurately labeled the Plaintiff, as a biological male based on their subjective psychological perceptions and role preferences. This imposition of a male birth sex and gender identity upon the Plaintiff is a contradictory against her traditional biological female birth sex and female gender identity norms should have look and behave, has resulted in her enduring cruel and unusual treatments, thereby infringing upon the Plaintiff's rights as a biological female birth sex and gender identity.

5. the Thirteenth Amendment revealed, the Official State and Federal Defendants unlawfully obtained access to the Plaintiff authentic identification documents, authentication features, personal identification Card[s] properties, and identifiers without due process of the law,

further exacerbated by the Defendants, either individually or collectively, utilizing fictitious, similar, or identical names, and in certain instances, even resorting to changing their own legal names to mirror that of the Plaintiff, thus facilitating unauthorized access to the Plaintiff's legitimate North Dakota State-issued Real Identification Driver License Card[s] that imposed an enforced compulsory conditions of involuntary servitude upon the Plaintiff, unjustly restricting or curtailing her constitutional rights to liberty all stemming from the fictitious, similar and identical named Defendants' from a "Taking Clause" infringements, perpetrated by the Official State and Federal Defendants.

6. the Fourteenth Amendment, which stipulates that all individuals born or naturalized in the United States and subject to its jurisdiction are citizens with certain rights, including equal protection under the law, was instrumental in revealing the absence of equal protection rights for the Plaintiff in this case. The Plaintiff's rights were infringed upon when it became evident that she was not afforded the same legal protections as others within the North Dakota State jurisdictions. This infringement occurred due to the failure of the state to provide equal treatment under the law, as mandated by the Fourteenth Amendment, thereby depriving the Plaintiff of her constitutional rights.

7. The Official State and Federal Defendants, occupying roles within both the governmental and non-governmental agencies across local, state, and federal tiers, have transgressed their fiduciary obligations and breached their contractual agreements of an employments. Their involvement in the clandestine commerce of a[n] falsified or authentic documentations, as well as, a[n] authentication features, personal identification cards, notarized instruments and, forged signatures onto a "Gender Designation" change forms are evident. Additionally, those Defendants who have adopted pseudonymous, resembling, or identical identities to the Plaintiff's lawful name have illicitly replicated her signatures on an official paperwork, devoid of her legal consents. These deeds constitute conspiratorial acts against the Plaintiff's rights and constitute clear infringements of a various Federal statutes of the United States, including, though not confined to:

- the Real ID Act 2005 (relating to the H.R. 1268 sec. 202 et. seq.),
- Title 18 U.S.C. 241 (relating to a Conspiracy Against Rights),
- Title 18 U.S.C. § 1015(E) (relating to False Claim of Citizenship),
- Title 18 U.S.C. § 1028 (relating to Fraud and Related Activity in Connection with Identification Documents, Authentication Features, and information),

- Title 18 U.S.C. § 1029 (relating to Fraud and Related Activity in Connection with Access Devices),
- Title 18 U.S.C. § 1030 (relating to Fraud and Related Activity in Connection with Computers),
- Title 18 U.S.C. § 1038 (relating to False Information and Hoaxes),
- Title 18 U.S.C. § 1071 (relating to Concealing a Person from Arrest and Aiding and Abetting a Person from Arrest),
- Title 18 U.S.C. § 1341 (relating to Mail Fraud),
- Title 18 U.S.C. § 1343 (relating to Wire Fraud),
- Title 18 U.S.C. § 1346 (relating to Honest Services),
- Title 18 U.S.C. § 1342 (relating to Fictitious Name[s] or Address[es]),
- Title 18 U.S.C. § 1344 (relating to Financial Institution Fraud),
- Title 18 U.S.C. § 1510 (relating to Obstruction of Criminal Investigation[s]),
- Title 18 U.S.C. § 1512 (relating to Tampering with Witness, Victim, or an Informant),
- Title 18 U.S.C. § 1513 (relating to Retaliating Against a Witness, Victim, or an Informant),
- Title 18 U.S.C. § 1542 (relating to False Statement in Application and Use of Passport),
- Title 18 U.S.C. § 1701 (relating to Obstruction of Mails Generally),
- Title 18 U.S.C. § 1702 (relating to Obstruction of Correspondence[s]),
- Title 18 U.S.C. § 1703 (relating to Delay or Destruction of Mails or Newspapers),
- Title 18 U.S.C. § 1708 (relating to Thefts or Receipts of Stolen Mails Matter Generally),
- Title 18 U.S.C. § 2701 (relating to Unlawful Access to Stored Communications), and
- Title 18 U.S.C. 18 U.S.C. Chapter 37 - ESPIONAGE AND CENSORSHIP:
  1. Title 18 U.S.C. § 792 (relating to Harboring or Concealing Persons),
  2. Title 18 U.S.C. § 793 (relating to Gathering, Transmitting or Losing Defense Information), and
  3. Title 18 U.S.C. § 798 (relating to Disclosure of Classified Information).

In doing so, the Official State and Federal Defendants have deprived the Plaintiff of her due process rights, as guaranteed by the United States Constitution's Taking and Due Process Clauses, thereby compounding their offenses.

Additionally, it is crucial for the United States Congress to utilize its authority granted by the Interstate Commerce Act Clause to prevent the Official State and Federal Defendants from imposing an involuntary servitude upon the Plaintiff causing her to experience continuous Identity thefts and Identification of Goods instruments segregations from a "Taking" claims without the due process of law in a violations of the Fifth Amendment. These involuntary servitude have occurred through illicit means, such as the use of the Plaintiff's North Dakota State-issued Real Identification Driver License Card[s], held within the jurisdiction of the North Dakota State's Department of Transportation, Driver License[s] Division for a purposes of an eminent domain that extend beyond state borders in an espionage harboring or concealing any persons from prosecutorial consequences. And, these unauthorized actions,

including issuances, accesses, allocations, permissions, assignments, advocacies, granting, permitting, and forging sex changed documentations constitute commerce due to their substantial economic impact on interstate commerce or the cumulative effect of an identity thefts problems from the Official State and Federal Defendants forgery activities within the North Dakota State's Department of Transportation, Driver License[s] Division. These activities stem from a dishonest system, treating the Plaintiff's North Dakota State-issued Real Identification Driver License Card[s], as an eminent domain and/or unlawfully soliciting of the Plaintiff's identification documents for an eminent domain for a public sex trafficking purposes. The North Dakota State's Department of Transportation, Driver License[s] Division bears responsibility for these unlawful practices, displaying color, sex, age, religion, and disability discriminatory practices in favor of their fictitious, similar or identical named Defendants' North Dakota State citizens by allowing them to obtain the Plaintiff's North Dakota State-issued Real Identification Driver License Card[s] under a[n] fictitious, similar, or identical named Defendants matching to the Plaintiff's legal identity and identification of goods.

Furthermore, those fictitious, similar, or identical named Defendants, within a various contractual contexts including a[n] rental agreements, job applications, vehicle purchases, and educational endeavors, have violated the Fifth Amendment's "Taking Clause" by an unlawfully seizing of the Plaintiff's true-identity, authentic identification documents, personal identification cards, identifiers and related properties without a due process of the law or just compensations. For instance, when the North Dakota State's Department of Transportation, Driver License[s] Division have unfairly imposed biased role preferences based on the Official State and Federal Defendants' psychological perceptions of the Plaintiff's Department of Transportation, Driver License[s] Division photograph dated on May 15, 2019, the Official State and Federal Defendants had engaged in duplicative procedures, altering details and background information onto the Plaintiff's North Dakota State-issued Real Identification Driver License Card[s] when the Official State and Federal Defendants had falsely claim the Plaintiff first taken of her North Dakota State-issued Real Identification Driver License Card photograph eyes were supposedly close without showing the Plaintiff evidence. These manipulations not only facilitated fraudulent and/or forged national security background checks clearances approval but also led to the suspension, nullifying, or voiding of the Plaintiff's North Dakota State-issued Real Identification Driver License Card[s]. Such "taking" actions amount to a violations of the Plaintiff's private property rights for an eminent domain for public use placing her into a habeas corpus North Dakota infringements status, as the Official State and Federal Defendants lack judiciary due process of the law against the Plaintiff. And, a compensation should be provided to the Plaintiff under the "Taking Clause" when the North Dakota State's Department of Transportation, Driver License[s] Division fails to rectify those Official State and Federal Defendants  North Dakota infringements.

These fraudulent National Security clearances background checks approvals are/were conducted onto those Defendants using a[n] fictitious, similar, or identical names in order to match the Plaintiff legal name, resulting in the overriding of a legitimate investigative checks pertaining to the Plaintiff's identity from the North Dakota State's Department of Transportation, Driver License[s] Division. Consequently, the Official State and Federal Defendants has/had unlawfully, intentionally, and continuously misidentified or disidentified

the Plaintiff's true-identity, authentic identification documents, authentication features, personal identification cards properties, and identifiers. And, these actions constitute a[n] unfair investigative and deceptive business practices, which are flagrantly violates an established public policy due to their immoral, unethical, oppressive, malfeasance, misfeasance, unscrupulous, and significantly harmful nature. By falsely asserting that the Plaintiff is not the authentic or original person. Also, the Official State and Federal Defendants have claimed that the Plaintiff's actual identification documents, authentication features, personal identification cards properties, or identifiers supposedly belong to a male birth sex or a[n] fictitious, similar, or identical named Defendants who supposedly shared similar characteristics, traits, or appearances role preference discriminations, all without any legal proof or evidence or due process of the law.

## II.     The Parties to This Complaint.

### A.  The Plaintiff(s)

Name:                           Sarai Hannah Ajai

Address:                      2432 20th Avenue South, Apt 205

|  Fargo | North Dakota | 58103 |
|---|---|---|
| City | State | Zip Code |

County:                                         Cass County

Telephone Number:                         630.247.6195

E-Mail Address:                       ajai.sarai.h@gmail.com

### B.  The Defendant(s)

The relevant statutes governing the use of DOE ET AL are found in Corpus Juris Secundum (CJS) 67A Parties § 171, which pertains to cases involving unknown and fictitious names. The following legal cases provide insight into the benefits and principles behind Rule 9(h) and the tolling doctrine:

1. Rawson v. Jones, 816 So. 2d 367, 369 (Miss. 2001): This case highlights one of the advantages of Rule 9(h), which allows the Plaintiff who knows about her cause of action against the Defendants but is unaware of their true identity to designate a fictitious parties as the Defendants. This designation permits the Plaintiff to utilize the court's resources; in order to discover the true identity of the Defendants.

2. Hutchinson v. Fishing Engineering Corp, 153 A. 2d 594 (Del. Ch. 1959): In case involving a fiduciary duty, this case establishes that the court exercises restraint when applying the doctrine of

laches, even in concurrent jurisdiction cases.

3. Freeman v. State, N.J. Super. 11, 31, 788 A. 2d 867 (App. Div.): This case allows for the tolling doctrine to be applied by a court when one or more parties engages in overt trickery that induces the Plaintiff to delay the timely filing of a complaint.

4. Sousa v. Casey, 111 R.I. 623, 306 A.2d 186 (1973): The purpose of § 9-5-20 is to afford the Plaintiff the opportunity to toll the applicable statutes of limitations against fictitiously named Defendants upon filing a complaint.

In order to overcome the statute of limitations, the Plaintiff may designate the Defendants as a[n] fictitious, similar, or identical named persons based on the Plaintiff ignorance of the Defendants' true identity. The Plaintiff may then amend the complaint once the Defendants' actual identification documents, authentication features, personal identification cards properties, or identifiers are discovered. By employing the concept of relation back to this amended complaint, the Plaintiff can avoid the time bar imposed by the statute of limitations. It is crucial for the Plaintiff to be unaware of the Defendants' identities, ignorant of the facts giving rise to the cause of actions against the Defendants, or unaware that the laws provide a cause of actions against these Defendants.

Provide the information below for each Defendant named in the complaint, whether the Defendant is a[n] individual, government agency, organization, or corporation. For an individual Defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual or official capacity, or both. Attach additional pages if needed.

| | |
|---|---|
| Name: | North Dakota Department of Transportation |
| Job or Title (*if known*): | N/A |
| Address: | 608 East Boulevard Avenue |
| | Bismarck     North Dakota     58507 |
| | *City*     *State*     *Zip Code* |
| County: | Burleigh County |
| Telephone Number: | N/A |
| E-Mail Address: | N/A |

☒ Individual capacity     ☒ Official capacity

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non-Prisoner)

| | | | |
|---|---|---|---|
| Name: | The United States Postal Service, Office of Inspector General | | |
| Job or Title (*if known*): | N/A | | |
| Address: | 1735 N Lynn Street | | |
| | Arlington | Virginia | 22209 |
| | *City* | *State* | *Zip Code* |
| County: | Arlington County | | |
| Telephone Number: | N/A | | |
| E-Mail Address: | N/A | | |

☒ Individual capacity   ☒ Official capacity

## III.   Basis for Jurisdiction.

Under the Title 42 U.S.C. § 1983, you may sue state or local Officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and Federal Laws." Under the Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), you may sue Federal Officials for the violations of certain constitutional rights.

**A.** Are you bringing suit against *(check all that apply)*:

☒ Federal officials (a Bivens claim)

☒ State or Local Officials (a § 1983 claim)

**B.** Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and Federal Laws," Title 42 U.S.C. § 1983. If you are suing under the section 1983, what Federal constitutional or statutory right[s] do you claim is/are being violated by state or local officials?

The Plaintiff legal civil cause of actions arises under the Fourth, Fifth, Six, and Fourteenth Amendments concerning constitutional civil rights "Takings" claims pursuant to the Title 42 U.S.C. § 1983 against the Official State Defendants at the states and locals levels. These stems from the Plaintiff claims of:

1. an unauthorized duplications of her North Dakota State-issued Real Driver License Card[s], which is/was inconspicuously duplicated for an eminent domain for the public use productions and with each production of the Plaintiff's North Dakota State-issue Real Identification Driver License Card[s] are assigned a different "Document Discriminator" identifier known as "DD" which will be different from the Plaintiff's North Dakota State-issued Real Identification Driver License Card[s], DD identifier in her possession to which was/were either suspended, nullified, or voided by the North Dakota State's Department of Transportation, Driver License[s] Division agencies from their absence of the due process of law and just compensations;

2. the manipulations of her Personal Identifiable Information ("PII") within the North Dakota State's Department of Transportation, Driver License[s] Division database system such as,

intentionally changing the Plaintiff biological female birth sex to a male birth sex; and

3. the Defendants, whether acting individually or collectively, employ fictitious, similar, or identical names, and in some cases even changing their own legal names in order to mirror that of the Plaintiff, thereby enabling an unauthorized acquisitions of the Plaintiff's authentic North Dakota State-issued Real Identification Driver License Card[s];

within the North Dakota State's Department of Transportation, Driver License[s] Division database system. These actions are deemed to have an overreached eminent domain powers from the Official State Defendants actors who has/had intentionally, knowingly and willfully participated in a said "Taking" of the Plaintiff's North Dakota State-issued Real Identification Driver License Card[s] duplications for an eminent domain public uses have gone too far in a[n] abridging, impeding, hindering and infringing upon the Plaintiff fundamental constitutional rights and subjecting her to a forced compulsory conditions of an involuntary servitude National Security Identity and Identification of Goods instruments segregations, in a violations of the Thirteenth Amendments. As a result, the Plaintiff is claiming that the suspension, nullification or voiding of her authentic North Dakota State-issued Real Identification Driver License Card[s] by the aforementioned Defendants have deprived the Plaintiff of full use of her authentic North Dakota State-issued Real Identification Driver License Card[s] without making available the due process of the law or just compensations, thereby further infringing upon the Plaintiff's constitutional rights.

In light of the United States Supreme Court's ruling in the Knick v. Township of Scott, Pennsylvania, No. 17-647 dated on June 21, 2019, the Plaintiff asserts her rights to bypass state court jurisdiction for "takings" claims and proceed directly to the federal court. This decision overturned the precedent set by the Williamson County Regional Planning Commission v. Hamilton Bank of the Johnson City, 473 U.S. 172, which mandated that such claims first be heard in the state court. Therefore, the Plaintiff seeks to file a complaint for a violations of her civil rights directly in the federal court, as validated by the Knick decision. Consequently, the Plaintiff can proceed with her civil rights lawsuit directly in the Federal court, seeking redress for an alleged violations of her constitutional rights without the prerequisite of obtaining a final determination on a compensation from any state courts.

The Plaintiff alleges that certain Official State Defendants has/had unlawfully, intentionally, knowingly and willfully participated in an activities where they favored certain fictitious, similar or identical named Defendants, who are/were unlawfully issued, accessed, allotted, allowed, assigned, advocated, granted, permitted, disseminated, matched, linked, mapped, and forged sex changed documentations subscribed to a[n] fictitious, similar, or identical named Defendants to match the Plaintiff legal name. Those fictitious, similar, or identical named Defendants, by engaging in a negligent, false, and fraudulent misrepresentations' statements, either traded or possessed false or authentic identification documents, authentication features, identifiers, or personal identification card properties. The Plaintiff legal name is used by these fictitious, similar, or identical named Defendants to force the Plaintiff into a state of an involuntary servitude causing her to experience National Security Identity and Identification of Goods instruments segregations in invoking the Thirteenth amendment. The Official State Defendants in question were fully aware of the

authenticity of the Plaintiff's authentic identification documents, authentication features, personal identification cards properties, and identifiers, yet they took no legal actions to address these issues.

Furthermore, the Official State Defendants within their individual and official capacities or duties had a fiduciary duty to treat the Plaintiff appropriately. They are/were obligated to provide a honest services and represent the legitimacy of goods in a transactions and legal contractual agreements. The Defendants who are using a[n] fictitious, similar, or identical names in order to match the Plaintiff legal name has/had unlawfully, intentionally, knowingly, and willfully engaged in the trafficking of false or authentic identification documents, authentication features, or personal identification cards properties, thus creating an identity issuance issues and problems through their false representations' statements. The Official State Defendants are/were aware of those fictitious, similar, or identical named Defendants negligent, false, and fraudulent misrepresentations' statements and either knew they are/were false or recklessly made those false statements with actual knowledge of the Plaintiff's rights pertaining to her authentic identification documents, authentication features, personal identification cards properties and identifiers.

The Defendants, using a[n] fictitious, similar, or identical names in order to match the Plaintiff legal name made negligent, false, and fraudulent misrepresentations' statements that infringed upon the Plaintiff's rights regarding her identification documents, authentication features, personal identification cards properties and identifiers. The Plaintiff relied on these fictitious, similar, or - identical named Defendants, who shared her legal name, to tell the truth but instead encountered deceitful misrepresentations' statements that disproportionately affected her economic situations to fair housing, educational attainments, employment opportunities and benefits within the Plaintiff owned identifiers and National Security Clearances background checks. As a result, the Plaintiff was forced into their compulsory conditions of an identity involuntary servitude segregations, not through physical shackles or handcuffs, but by an intangible use of her identification of goods and National Security Clearance background profile used, as an eminent domain for a public use. The Official State Defendants has/had unlawfully issued, accessed, allotted, allowed, assigned, advocated, granted, permitted, matched, linked, mapped, forged sex changed documentations, duplicated the Plaintiff's North Dakota State-issued Real Identification Driver License Card[s], and disseminated the Plaintiff authentic identification documents, authentication features, personal identification cards properties and identifiers to the Defendants with a[n] fictitious, similar, or identical names that matches to the Plaintiff legal name. These acts are/were performed under the color of law and invoking the Thirteenth  amendment has/had resulted in the Plaintiff's identification of goods segregations slavery from a "Taking" claims. And, such slavery has/had caused by those Defendants with a[n]  fictitious, similar or identical names who are /were trafficking in a[n] false or genuine identification documents, authentication features, personal identification cards properties, or identifiers within their powers are/were masked, concealed, camouflaged, or disguised, as a modern-day intangible slavery in the 21st century, as well as to forced compulsory conditions of a sex-trafficking methods or schemes involuntary servitude upon the Plaintiff.

Furthermore, the Official State Defendants who lack the privilege to infringe upon the Plaintiff authentic identification documents, authentication features, and personal identification cards

properties thereby violating the Plaintiff's Due Process and Equal Protection Clauses under the color of law (Title 42 U.S.C. § 1983) are/were involved in the following actions:

1. The Official State Defendants utilized and included the Plaintiff's social constructs of colors and gender practices to assign a specific attributes, characteristics, or roles by a reason of her membership in a societal group of women and men. However, the Official State Defendants who has/had unlawfully, intentionally, knowingly, willingly issued, accessed, allotted, allowed, assigned, advocated, granted, permitted, disseminated, matched, linked, mapped, forged sex changed documentations, duplicated the Plaintiff's North Dakota State-issued Real Identification Driver License Card[s], and subscribed to the preferences of the Defendants with a[n] fictitious, similar, or identical names to match the Plaintiff legal name are treated and profiled more favorably than the Plaintiff. These inherent participations has/had demonstrated malicious intents and premeditated criminal conducts on the behalf of the Official State Defendants who possess individual and official capacities or fiduciary duties to:

   a. prevent such injustices conducted by the Defendants with a[n] fictitious, similar, or identical names to match the Plaintiff legal name.
   b. consider equitable relief in the form of a permanent and declaratory injunctions and restraining orders on the behalf of the Plaintiff due to their unlawfully, intentionally, knowingly, and willfully participations in a said North Dakota infringement conspiracies upon the Plaintiff constitutional rights to civil liberty.

2. The Official State Defendants has/had unlawfully, deliberately, knowingly, and willfully engaged in a said North Dakota infringement conspiracies with the Defendants using a[n] fictitious, similar, or identical names against the Plaintiff legal name; in order to unlawfully affix the Plaintiff forged signatures onto a notarized instruments, waive rights and/or "Sex Designation" changed forms documentations, and duplication of the Plaintiff's North Dakota State-issued Real Identification Driver License Card[s] without the her lawful authorities.

3. The Official State Defendants had made a negligent, false, and fraudulent misrepresentations' statements from a said North Dakota infringement conspiracies which has/had accused the Plaintiff of suffering from paranoid schizophrenia, dementia, or memory losses symptoms; in order to falsely deprive the Plaintiff of her constitutional rights. And, the Official State Defendants acts are/were aims to conceal their oligarchy malfeasance or misfeasance through their unlawfully, intentionally, knowingly and willfully participations in a said North Dakota infringement conspiracies with the fictitious, similar or identical named Defendants because of their fictitious, similar, or identical names in order to match the Plaintiff legal name. Also, their participations involved problems related to identifications trafficking, sex trafficking, labor trafficking, passive frauds, concealments, and North Dakota infringement conspiracies, thereby violating the Plaintiff's Due Process and Equal Protection Clauses Rights under the color of law (Title 42 U.S.C. § 1983). The pertinent legal precedents encompass various cases. In O'Connor v. Donaldson, 422 U.S. 563, 95 S. Ct 2486 (1975), the court emphasized that unless an individual poses a danger to themselves or others

and cannot live without state supervision, the state lacks the authority to an involuntarily commit them. This implies that monitoring the Plaintiff without cause violates her right to self-governance when she poses no threat to others. Additionally, in the Mathews v. Eldridge, 424 U.S. 319, 335, the court highlighted the importance of considering the private interest at stake, the risk of erroneous deprivations, and the government's interest in decision-making processes. In Heller v. Doe, 509 U.S. 312, 113 S. Ct. 2637 (1993), the Supreme Court differentiated between the treatment of mentally retarded and mentally ill individuals in an involuntary civil commitment cases, establishing varying burdens of proof. Moreover, in the Colorado v. Connelly, 479 U.S. 157, 107 S. Ct. 515 (1986), the U.S. Supreme Court overturned a previous ruling, asserting that while mental condition is relevant in assessing voluntariness, it alone cannot render a confession involuntary under the Fourteenth Amendment. These precedents lend support to the Plaintiff's arguments.

4. The Official State Defendants has/had allegedly accused the Plaintiff of being a homeless person, as defined by the Title 42 U.S.C. § 11302 for "an individual who lacks a fixed, regular, and adequate nighttime residences". The careless, deceptive, and fraudulent assertions made insinuate that the Plaintiff purportedly lacks a stable, consistent, and suitable nighttime dwelling, which is:

    **A.** a supervised or publicly operated shelter intended to offer temporary lodging (such as welfare hotels, communal shelters, and transitional housing for those with mental illness),

    **B.** an establishment providing temporary housing for an individuals meant for an institutionalization, or

    **C.** a public or private space not ordinarily designated or utilized as a regular sleeping quarters for people.

Those Official State Defendants, with full awareness and intent, allegedly knew of the Plaintiff's legally binding rental lease agreement with Goldmark Property Management, Inc ("Goldmark") since May 1, 2019, and up to the present day of this filed civil cause of actions, as indicated in this case dated on June 27, 2024. At this time, she is/was purportedly not residing in a homeless shelters or onto the public streets, as defined by the Title 42 U.S.C. § 11302. Nonetheless, those Official State Defendants has/had allegedly made false claims with their aims of fabricating or replicating the Plaintiff's North Dakota State-issued Real Identification Driver License Card[s], which is overseen by the North Dakota State's Department of Transportation, Driver Licenses Division, ostensibly for public use through an eminent domain "taking' claims by a[n] fictitious, similar, or identical named Defendants. This action purportedly subjected the Plaintiff to a[n] identity crisis and forced compulsory conditions of an involuntary servitude upon her to experience a National Security Identity and Identification of Goods' segregations, in a violations of the Thirteenth Amendment. These indicates an intentional disregard for the Plaintiff's privacy and constitutional rights to civil liberty based on a negligent, false, and fraudulent misrepresentation statements, resulting in an absence of the Plaintiff due process of the law, wherein false allegations of a homelessness status were levied against her.

Furthermore, the fictitious, similar, or identical named Defendants who correspond to the Plaintiff legal name allegedly engaged in an unlawful trafficking of a fraudulent or forged identification documents and/or her North Dakota State-issued Real Identification Driver License Card[s] because the Official State Defendants purportedly participated in a negligent, false, and fraudulent misrepresentation statements of a homeless status reports without her consents. This purportedly led to a severe difficulties for the Plaintiff, including those who facilitating identity thefts problems with those homeless fictitious, similar, or identical named Defendants. These situation entails a concerning scenario where individuals, often homeless and/or tenants who bearing names either similar or identical to the Plaintiff, frequently assume her identity and associated documents without requisite legal substantiations. And, these leads to a host of legitimacy issues due to their false personations and/or forged identification of goods, particularly within those homeless shelters, Goldmark, and other rental properties. By falsely attributing homelessness status to the Plaintiff without valid justifications or National Security clearances notifications, these actions will eventually compel her to resort to the public streets, a consequence of a continuous violations by those Official State Defendants. And, such a violations includes negligent, false, and fraudulent misrepresentation statements reported to those government agencies, thereby infringing upon the Plaintiff's Due Process and Equal Protection Clauses' Rights, as an outlined in the Title 42 U.S.C. § 1983 and the Fair Housing Act ("FHA"), Title 42 U.S.C. § 3601 et seq., that prohibits discriminations by a direct providers of a rental agencies. These North Dakota rental infringements create a hostile rental environments for the Plaintiff from those tenants based on her female biological birth sex and identifiable female gender identity should have look and behave, which is not in conformity to their sexual preferences gender-based ideologies of the Plaintiff. Despite the Plaintiff's extensive history of documented rental payments to a various rental agencies, corroborated by her bank statements for which should satisfy the rigorous standards of the United States National Security Clearance rental verification background checks, these injustices persist.

The Official State Defendants, through the use of a[n] fictitious, similar, or identical names in order to match the Plaintiff legal name, have intentionally and deliberately engaged in an unlawful trafficking of her identification of goods. Those identification of goods are/were issued, accessed, allotted, allowed, assigned, advocated, granted, permitted, disseminated, matched, linked, mapped, forged sex changed documentations forms, duplicated the Plaintiff's North Dakota State-issued Real Identification Driver License Card[s] and subscribed to by the Official State Defendants. Their purposes are/were to allow the fictitious, similar or identical named Defendants to assume the Plaintiff's identity through false personations, resulting in a series of a[n] fixed, uniform, and unchanging incidents of an identity thefts activities. These actions infringed upon the Plaintiff's rights under the Thirteenth Amendment, causing her to experience an enforced compulsory conditions of an involuntary servitude National Security Identity and Identification of Goods segregations problems. And, those fictitious, similar or identical named Defendants' performance of an identity thefts acts while utilizing genuine and forged or fraudulent identification of goods which are/were obtained through unreasonable searches and seizures without legal court jurisdictional procedures or probable causes are constituted, as a violations of the Plaintiff's Fourth Amendment rights. Given those absences of any specific statutes granting the fictitious, similar or identical named Defendants rights in a[n] titles, educational attainments, employments, housings and

opportunities, or benefits using a[n] fictitious, similar, or identical named Defendants against the Plaintiff legal name. So, the Official State Defendants has/had unlawfully, intentionally, knowingly, and willfully trafficked the Plaintiff's genuine identification of goods implies a civil cause of actions.

These actions directly implicate the Official State Defendants in their official capacities or duties are/were acting "under the color of law." As established in an Ex parte Young, 209 U.S. 123 (1908), the Official State Defendants can be sued in their official capacities for prospective injunctive relief to stop ongoing violations of the Federal law. In Hafer v. Melo, 502 U.S. 21 (1991), the Supreme Court held that State Official Defendants in their personal capacities are a "persons" under the Title 42 U.S.C. § 1983. Furthermore, in Verizon Maryland Inc. v. Public Service Commission of Maryland, 535 U.S. 635 (2002), the Supreme Court reaffirmed the Ex parte Young doctrine, allowing suits against Official State Defendants for prospective relief to prevent an ongoing violations of the Federal telecommunications law, and holding them liable for these damages of an actions taken under the color of state law. Therefore, while the Eleventh Amendment provides a certain backdoor immunities, there are important exceptions and avenues for holding those Official State Defendants accountable for the deprivation of the Plaintiff's rights, privileges, or immunities secured by the Constitution and Federal laws under:

1. **Ex parte Young doctrine:** For prospective injunctive relief to sue Official State Defendants to stop an ongoing violations of Federal law.

2. **Individual Capacity Suits**: For suing the Official State Defendants for a damages in their personal capacities under the Title 42 U.S.C. § 1983.

In instances where the Official State Defendants has/had acted under the apparent authorities to possess on the behalf of their respective have caused the Plaintiff to be deprived of rights, privileges, or immunities guaranteed and protected by the Fourteenth Amendment rights, as well as the first through the tenth Amendments to the Constitutional Doctrine of the Bill of Rights, which ensure the Plaintiff's rights not to be deprived of life, liberty, or property without due process of the law, it is deemed unlawful.

Moreover, the Official State Defendants who has/had assisted those fictitious, similar, or identical names in order to match the Plaintiff legal name have unlawfully, intentionally, knowingly, and willfully engaged in an unlawful use of a trafficked identification of goods. And, those Official State Defendants have become intertwined and woven within our societal politics, as the Plaintiff spooky entanglements leading to a disconcerting situations where the Plaintiff, who possesses legitimate property rights to her authentic identification documents, authentication features, personal identification cards properties and identifiers, experiences their unlawful [eminent domain public] use. And, the Plaintiff becomes the deliberate target of those Official State Defendants who has/had unjustly preferred and favored those individual Defendants with a[n] fictitious, similar, or identical names in order to match the Plaintiff legal name. These subjective sex and gender identity psychological perceptions and role preferences problems are/were stemming from those Official State Defendants' extreme and excessive frustrations that the Plaintiff possesses accurate identification of goods credentials and is not a biological male from birth, resulting in a deliberate intent to physical harm or eliminate her existence on earth; in order to conceal human rights Habeas Corpus problems with the Plaintiff's North Dakota State-issued Real Identification Driver License Card[s] from an absence of her due process of law rights. Afterward, the Plaintiff finds herself

trapped in an enforced compulsory conditions of an involuntary servitude-like situations due to those Official State Defendants intentional associations with her authentic identification documents, authentication features, personal identification cards properties, and identifiers with a[n] fictitious, similar, or identical named Defendants. And, those fictitious, similar, or identical named Defendants are/were unlawfully, intentionally, knowingly and willfully permitted to coexist, cohabitate, or share the Plaintiff's United States National Security verifications background checks clearances without her acknowledgements or lawful authorities, forcing her into an identities crisis.

In addtion, the Official State Defendants have unlawfully, intentionally, knowingly, and willfully, participated in a said North Dakota identity thefts and infringement conspiracies by providing misleading and false investigative statements to the governmental and non-governmental agencies' Officials. And, those Official State Defendants has/had concealed the Plaintiff's authentic identification documents, authentication features, personal identification cards properties, identifiers, DNA definitions and inconspicuously manipulated the governmental and non-governmental agencies database systems through deceptive practices of a gaslighting and/or scapegoating schemes and methods against the Plaintiff identity and identification of goods legitimacies. And, the Defendants, with a[n] fictitious, similar, or identical names matching to the Plaintiff legal name has/had trafficked in an unlawful identification of goods, which are/were heavily favored over the Plaintiff's authentic identity and identification of goods without any proof or evidence and due process of the law. And, those Official State Defendants has/had failed to match these identification of goods with the Plaintiff's forensic biometric profile, leading to a continuous mistakes, misidentifying, disidentifying and identity confusion in her true-identity due to an intentional mishaps, mistakes or misleading or false investigative statements caused by those fictitious, similar or identical named Defendants who have changed their own legal names in order to match the Plaintiff legal name.

Additionally, those fictitious, similar or identical named Defendants who has/had subscribed by their legal name changes to the Plaintiff legal name onto the governmental and non-governmental agencies database systems, resulting in the issuances, accesses, allocations, allowances, assignments, advocating, granting, permitting, disseminating, linking, mapping, forging sex changed documentations forms, and duplicating the Plaintiff's North Dakota State-issued Real Identification Driver License Card[s] from an unlawful forged and trafficking identification of goods that associated with the Plaintiff's authentic identity and identification of goods without her lawful authority or due process of the law.

As a consequence, the Plaintiff's verification of her National Security background checks clearances by both governmental and non-governmental agencies databases has/had resulted in:

1. The absence of a[n] proof or evidence from an Official State Defendants, who unlawfully, intentionally, knowingly and willfully represented the Plaintiff in a jurisdictional court hearing without her acknowledgment has/had violated the Plaintiff's due process rights.

2. The databases compelled the Plaintiff into an involuntary servitude-like segregations conditions of a relational identity and identification of goods, forcing her to coexist, cohabitate, or share her authentic identification of goods with those Defendants possessing a[n] fictitious, similar, or identical names. And, their misidentified or disidentified of the Plaintiff, as the original person for which, unlawfully, intentionally, knowingly and willfully

his/had disconnected the Plaintiff from her authentic identification documents, authentication features, personal identification cards properties, and identifiers.  Also, the Defendants using a[n] fictitious, similar, or identical names to match the Plaintiff legal name has/had triggered identification of goods' segregations against the Plaintiff's societal identity from the North Dakota State and local governmental and non-governmental agencies due from their Official State Defendants who has/had used joint and constructive social liability schemes and methods in a deceptive business practices, committing honest services fraud under the color of law within their official authoritative or fiduciary duties from their employment agreements or contracts.

Those Official State Defendants deliberately violated the Plaintiff constitutional rights to civil liberty:

    a. In order to manipulate and/or appropriate protected class category quotas to those Defendants with a[n] fictitious, similar or identical names to match the Plaintiff legal name using her National Security Background Checks Clearances profile,

    b. in the Plaintiff's biometric identification of goods identifiers profile,

    c. from the Plaintiff's identification of goods evidence,

    d. in the Plaintiff's characteristics inherent values,

    e. in the Plaintiff's educational attainments,

    f.  in the Plaintiff's DNA definitions, and

    g. in the Plaintiff's civil rights protections

in favor of those Defendants with a[n] fictitious, similar, or identical names who unlawfully, intentionally, knowingly and willfully trafficked in an identification of goods documents or engaged in a false identification of goods documents issuance problems. The Official State Defendants has/had treated those fictitious, similar, or identical named Defendants more favorably based on their subjective psychological perceptions and role preferences profiles problems, all while disregarding the consequences of their actions in the North Dakota identity thefts infringement conspiracy against the Plaintiff constitutional rights to civil liberty under the color of law.

The Plaintiff's civil causes of actions arise against those Official State Defendants who has/had unlawfully, intentionally, knowingly, and willfully failed to question or challenge the authenticity of the Plaintiff authentic identification documents, authentication features, and personal identification cards properties or identifiers in any judiciary court systems, thus violating the due process clause doctrine. As stated in the Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950), "many controversies have rage about the cryptic and abstract words of the 'Due Process Clause' but there can be no doubt that at a minimum the judiciary court systems require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case must be provided." Similarly, Fuentes v. Shevin, 407 U.S. 67, 80 (1972) noting that the "central meaning of a procedural due process" is the "right to notice and an opportunity to be heard…at a meaningful time and

in a meaningful manner." Likewise, Wolff v. McDonnell, 418 U.S. 539, 557-558 (1974), emphasizes that the "court has consistently held that some kind of hearing is required at some time before a person is finally deprived of his/her property interests."

Despite these constitutional guaranteed rights, those Official State Defendants has/had unlawfully issued, accessed, allotted, allowed, assigned, advocated, granted, permitted, disseminated, forged sex changed documentations forms, and duplicative the Plaintiff's North Dakota State-issued Real Identification Driver License Card[s] on an absolute conditions considerations in order to enforce a coexistence involuntary servitude upon the Plaintiff authentic identification documents, authentication features, and personal identification cards properties and identifiers. Furthermore, the Plaintiff official complaints are/were unlawfully, intentionally, knowingly and willfully been denied from the North Dakota State's Department of Transportation, Driver Licenses Division due from the Plaintiff failure to conform to their gender construct stereotypes onto how she should look and behave, as the Plaintiff is a biological female from birth and her gender identity is female. And, the Plaintiff ceased to exist, as a permanent citizen of the State of North Dakota; after, the Official State Defendants has/had unlawfully, intentionally, knowingly and willfully participated in a said suspension, nullification, or voiding of the Plaintiff's North Dakota State-issued Real Identification Driver License Card[s] without receiving any notifications in a violations of the Title 42 U.S.C. § 1983, and N.D.C.C. § 36-06-32, 39-06-33 and 39-06-34. The Official State Defendants denial of the Plaintiff constitutional rights infringes upon her Sixth Amendment for which prohibits any clandestine proceedings that could potentially promote the use of the justice system, and the Thirteenth Amendment, which prohibits an enforced compulsory conditions of an involuntary servitude from those Official State Defendants who has/had acted under the color of law violations.

Accordingly, the Official State Defendants breached the Title 42 U.S.C. § 1983, as delineated in the Screws v. United States, 325 U.S. 91 (1945), affirming the pivotal aspects of the Supreme Court ruling that:

1. The officers' actions, despite being undertaken in their law enforcement capacity, constituted actions "under color of law" due to the use of their state-granted authority and power.
2. "Willfully" was construed to necessitate that the Official State Defendants harbored a specific intent to violate the victim's Federal rights.
3. Concerns regarding the due process centered on the potential ambiguity in applying the statute, emphasizing that a due process mandates laws to be precise and unambiguous, and the interpretation of a "willfully" aimed to ensure that the Plaintiff would not be convicted without fair notice of the illegality of her actions.

In other words, the Plaintiff key points to sum up in a findings of the Screws v. United States, focusing on the use of an authority by the Official State Defendants, the necessity of a specific intents for a "willful" actions to deprive the Plaintiff Federal rights, and the importance of a clarity and fair notice from the Official State Defendants in a due process considerations regarding to a violations of the Title 42 U.S.C. § 1983.

To sum up, the Plaintiff's civil cause of actions case outlines multiple violations of her due process and constitutional rights by those Official State Defendants concerning her authentic identification documents, authentication features, and personal identification cards properties and identifiers, which may have been facilitated and impaired by a gender-based discriminations, leading to the Plaintiff involuntary servitude identification of goods segregations problems. Additionally, the Official State

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non-Prisoner)

Defendants are/were not legally justified and breached federal statutes.

C. Plaintiffs suing under a Bivens may only recover for the violations of certain constitutional rights. If you are suing under a Bivens, what constitutional right[s] do you claim is/are being violated by Federal Officials?

The Plaintiff's civil cause of actions arises under the Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), highlighting the significance of a constitutional rights. The case emphasized the power of a federal courts to issue an injunctions against Federal Defendants who has/had violated constitutional rights, stressing the importance of empowering citizens to an enforce these rights. Therefore, the Plaintiff alleges a misconducts or wrongdoings under a Bivens claims. Specifically, the Plaintiff asserts that the Federal Defendants has/had unlawfully, intentionally, knowingly, and willfully confiscated, opened, lost, and distributed her legitimate sent and delivered United States Postal Service ("USPS") mail letters items within their USPS facilities jurisdictions, as an eminent domain for the public use, and to a[n] fictitious, similar, or identical named Defendants 'at-will'. These actions are/were intended to be used for an eminent domain, as a National Security Background Checks Clearances from a forge identification of goods and/or documentations for them whom thinks those fictitious, similar or identical named Defendants have actual legitimacy rights claims to the Plaintiff actual sent and delivered USPS mail letters items while the Federal Defendants are/were acting under the color of their Federal authority has/had made a warrantless searches and seizures against the Plaintiff. The Plaintiff contends that these actions are/were conducted under the color of the Federal authority for which, constituted a warrantless searches and seizures under the Fourteenth Amendment. Furthermore, the Plaintiff claims that the Federal Defendants has/had acted without probable causes under the Federal Defendants official authoritative, capacities or fiduciary duties by ways of causing the Plaintiff to be subjected and forced into a compulsory conditions of an involuntary servitude problems under the Thirteenth Amendment and deprived of her constitutional rights to civil liberty under the Bill of Rights.

The Plaintiff raises a fundamental inquiry concerning the actions of the Federal Defendants, specifically whether they were operating on the behalf of the United States governmental agencies in a manner consistent with "authorized acts," given the violations of the Plaintiff's Fourth Amendment Rights by a said Federal Defendants. It is noteworthy that the term "authorized" remains undefined within the Federal Criminal Code; however, the jurisprudence of Illinois has elucidated its interpretation. As exemplified in the People v. Shinn, 5 Ill. App. 3d 468, 472, 283 N.E.2d 502, 505 (1972), citing People v. Young, 100 Ill. App. 2d 20, 23, 241 N.E.2d 587, 589 (1968), "authorized" has been construed as a signifying an individual endowed with authority.

The matter of a Federal Defendants' compliance with their authoritative duties were addressed by the Supreme Court of Utah in the State v. Gardiner, 814 P.2d 568, 574 (Utah 1991). This case pertinently had considered whether a Federal Defendants' actions fell within the confines of their authorities and responsibilities. Similarly, in an instances where a Federal Defendants illicitly engaged in an activities such as, a[n] issuing, accessing, allotting, allowing, assigning, advocating, granting, permitting, disseminating, matching, linking, mapping, forging sex changed documentations forms, and duplicated the Plaintiff's North Dakota State-issued Real Identification Driver License Card[s] to a[n] fictitious, similar, or identical named Defendants in order to correspond and match with the Plaintiff legal name, and her concern emerges, as to whether these actions transpired within the bounds of their official authoritative capacities or fiduciary duties, and notably, in an absence of a judicial oversight in an adherence to the due process of law.

In attempting to define the parameter of the "scope of authority," reference was made to the United States v. Heliczer, 373 F.2d 241, 245 (2d Cir. 1967), a decision rendered by the Second Circuit. This pivotal case established that a pivotal criterion revolves around whether a Federal Defendants performed duties that aligned with their official authoritative capacities or fiduciary duties, or alternatively, veered into a personal endeavors or malevolent actions. It is incumbent upon this context to comprehensively ascertain whether a Federal Defendants are/were engaged in the execution of their prescribed duties or whether their actions deviated into an unauthorized and objectionable methods.

This consideration of the Plaintiff's allegations necessitates a meticulous examination of whether a Federal Defendants has/had operated within the parameters of their designated responsibilities or strayed into an unapproved and potentially unlawful pursuits. The determination of whether their actions are/were "authorized acts" hinges on these delineations, underscoring the need for a thorough assessment of their duties, activities, and intentions.

And for this reason, the Plaintiff asserts that a Federal Defendants has/had unlawfully, deliberately, knowingly, and willfully engaged in an unconstitutional actions within the United States' jurisdictions under their official authoritative capacities or fiduciary duties. And, the Federal Defendants goal appears to be an amassing extensive authoritative powers for which enabling them to infringe upon the Plaintiff constitutional rights to civil liberty with an almost godlike mind-set. These contrasts starkly with the actions of an unauthorized individual trespasser who lacks such an official capacity when an Official Defendants violations of the Plaintiff's Fourth Amendment rights being of a lesser magnitude. Furthermore, the Federal Defendants has/had unlawfully, intentionally, knowingly, and willfully acted unconstitutionally in their official authoritative roles or fiduciary duties. These aims are/were to advance the Federal Defendants concealed agendas of a secrecy and confidentiality which are/were jeopardizing the Plaintiff's National Security verifications background clearances checks by a disregarding and/or invoking the Plaintiff actual identification documents, authentication features, personal identification cards properties, and identifiers belonged to her without justifiable causes from the due process of law. This enables the Federal Defendants to facilitate an eminent domain for a public use along with a[n] fictitious, similar, or identical named Defendants to which align them with the Plaintiff legal name, facilitating an identification of goods trafficking problems, whether genuine or deceptive.

All of these actions carry prosecutorial consequences, as established by the Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics.

In addition, the Federal Defendants who has/had unlawfully, intentionally, knowingly, and willfully tampered with, confiscated, or altered the USPS mailed letters items sent to the Plaintiff residential mailbox number, 205, whether within their legal jurisdiction or outside the USPS facilities has/had deprived the Plaintiff of her due process rights. And, the Plaintiff is left wondering why those Federal Defendants had the authority to unlawfully and intentionally disseminate her USPS delivered and sent mailed letters items to be use as, an eminent domain for a public use documentations without the Plaintiff consents or legal authorizations. Additionally, the Plaintiff's USPS Informed Delivery online residential account was sometimes deliberately masked or substituted with junk mail images and letters items used for an inconspicuously methods and schemes agendas of the Plaintiff original sent mailed letters items to which was/were unlawfully confiscated by the USPS' Federal Defendants for an eminent domain for the public use. And, those inconspicuous actions to concealed the Plaintiff original USPS delivered mail

letters items, and cause her to experience identity thefts problems, coverups, and a violations of the Plaintiff constitutional rights.

Furthermore, have those Federal Defendants legitimately questioned the Plaintiff's identity in a Federal court system with a due process proceeding, she would not have endured the following:

1. Serial identity thefts problems, which violates the Title 18 U.S.C. § 1028 (pertaining to Fraud and Related Activity in a Connection with an Identification Documents, Authentication Features, and Information).

2. Infringements, interferences, and encroachments on the Plaintiff's computer devices, which violates the Title 18 U.S.C. § 1030 (pertaining to Fraud and Related Activity in a Connection with a Computers).

3. False sex determinations from the public and tenants hostile rental environment harassments for a "habitual dislikes" against the Plaintiff biological female birth sex and gender identity preferences are/were stemming from an unreasonable searches and seizures without a probable cause by a Federal Defendants who continuously violates the Plaintiff's Fourth Amendment rights against an unreasonable searches and seizures and acting under a Bivens claims for the color of Federal authority, including the Thirteenth Amendment. Those Federal Defendants' actions has/had amounted to the Plaintiff to experiences their enforced compulsory conditions of an involuntary servitude identification of goods' segregations, and those Federal Defendants' failure to act under the color of the Federal Authority and Bivens claims.

Additionally, the Plaintiff asserts a violations of her tangible and intangible rights to a honest services under the Title 18 U.S.C. § 1346 (pertaining to a Honest Services Fraud) by a Federal Defendants. The Federal Defendants has/had deprived the Plaintiff of these rights concerning her USPS mailed letters items and wire communications are/were subjecting her to an interference and unlawful confiscation without a reasonable legal justifications. These actions transpired despite the Federal Defendants fiduciary duty to treat the Plaintiff appropriately within the USPS facilities agencies.

The Plaintiff also alleges a violations of her constitutional rights, claiming that her USPS delivered and sent mailed letters items and wire communications are/were unlawfully opened, interfered with, impeded, confiscated, and distributed by the Federal Defendants using a preferential treatment methods and schemes with a[n] fictitious, similar and identical named Defendants. These actions has/had amounted to a material deceptions designed to defraud the Plaintiff of her USPS delivered and sent mailed letters items or wire communications. Such conduct falls under the Title 18 U.S.C. § 1341 (pertaining to Frauds and Swindles) and constitutes a violations of the Plaintiff's Fourth Amendment rights under a Bivens claims, as she was not secure in her own person, apartment[s], papers, devices, and effects against an unreasonable searches and seizures conducted by those Federal Defendants acting under the color of their Federal authority.

Under the Title 42 U.S.C. § 1983, Thirteenth Amendment, and Bivens claims acting under the color of the Federal authority, the Plaintiff's civil action raises a profoundly significant critical issues important to this case to which are summarized in the nine Federal Questions. These questions are not only concern the interests of the United States, as a whole but also touch upon matters vital to the public interest. The

lawsuit brought forth by the Plaintiff could potentially pave the way for the establishment of a new Federal, State, or local laws aimed at safeguarding against a[n] immoral, unethical, oppressive, and substantially injurious actions by the Official States or Federal Defendants against effectively preventing the rise of an oligarchy power structures within our United States of America databases infrastructure systems.

**The Nine Federal Questions at hand are as follows:**

1. Whether the North Dakota Department of Transportation's (DOT) Official State Defendants has/had permitted, endorsed, decriminalized, facilitated and approved a due process North Dakota infringements related to a "Relational Identity" with the North Dakota State's citizens:

    a. has a[n] fictitious, similar, or identical named Defendants been permitted and allowed to coexist, cohabitate, or share the North Dakota State's citizens-issued [Real] Identification Driver Licenses or States Identification Cards without a legal notifications?
    b. do these actions of the Official State Defendants constitute a violations of the Fifth Amendment 'Taking' clause claims and the Sixth Amendment for the rights to a public trial without unnecessary delay?
    c. do these violations trigger an enforced compulsory conditions of an involuntary servitude under the Thirteenth Amendment against the North Dakota State's citizens?
    d. do these actions of the Official State Defendants lead to an identity thefts and identification of goods segregations against the North Dakota State's citizens?
    e. do these actions of the Official State Defendants violates the Title 42 U.S.C. § 1983, and N.D. Cent. Code § 39-06-32, 39-06-33, and 39-06-34?

2. Whether the actions of the Official State Defendants in the State of North Dakota Department of Transportation's (DOT) have been a violations of the clearly establish rights of the North Dakota State's citizens under the:

    a. Fifth Amendment that ensures individuals are informed of the nature and cause of accusations against them are their fundamental aspect of due process rights?

    b. Sixth Amendment that guarantees individuals the rights to confront their witnesses against them in a criminal trial for which will ensure fairness and reliability of an individuals' testimony?

    c. Fourteenth Amendment that provides a due process protections at the state level to which ensure a fair treatment in legal proceedings?

    d. Title 42 U.S.C. § 1983 that provides a federal civil cause of actions for a violations of an individuals' constitutional rights by the Official State Defendants who are/were acting under the color of law?

3. Does the North Dakota State practice secrecy under immunity, vagueness doctrine and

gender-based discriminations State provisions constitute a violations of rights of the North Dakota State's citizens under the:

    a.  State Secrecy and Immunity that addresses whether claims of state secrecy and immunity, asserted by the Official State Defendants under the Title 42 U.S.C. § 1983, violates the rights of the North Dakota State's citizens and this pertains to situations where misconducts or wrongdoing by the Official State Defendants are shielded from scrutiny?

    b.  Vagueness Doctrine that discusses whether the intentional exclusion of a procedural due process clauses related to an individuals' biological birth sex and gender identity is vague or ambiguous from an absence of a DNA profile tests due process rights, in its North Dakota law application analytical sex-based examinations that potentially led to discriminatory practices?

    c.  Gender Identity-Based Civil Rights Protection that focuses on whether the Official State Defendants have practice gender-based discriminations tactics methods against the North Dakota State's citizens who do not conform to a stereotypes or roles imposed by the Official State Defendants regarding their gender identities?

4. Does the application of the Title 42 U.S.C. § 1983, under the color of law and the Fifth Amendment have result in the deprivation of rights when the Official State Defendants have treated the legal private property rights of the North Dakota State's citizens Department of Transportation (DOT) Driver License[s] Division-issued [Real] Identification Driver Licenses or States Identification Cards as a "Taking" clause claims held in an eminent domain for a public use status, thereby avoiding the North Dakota State citizens' private property rights through their vagueness doctrine?

5. Who holds the full legal private property rights to the North Dakota States citizens' Department of Transportation (DOT) Driver License[s] Division-issued [Real] Identification Driver Licenses or States Identification Cards: the North Dakota States citizens themselves, or the States, Counties, Local government, and non-government agencies?

6. Does the failure of the Official State Defendants to enforce the Title 42 U.S.C. § 1983 under the color of law have resulted in a suspension, nullification, or voiding of the North Dakota States citizens' Department of Transportation (DOT) Driver License[s] Division-issued [Real] Identification Driver License[s] or States Identification Cards are considered private property held in an eminent domain for a public use, without North Dakota citizens' consents and/or notifications, thereby violating their due process rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments within their respective North Dakota State jurisdictions?

7. Whether Bivens claims can arise from the actions of the Federal Defendants who acted under the color of the "Federal Authority," in seizing the United States citizens' state-issued Real Identifications Driver's license[s] Card[s] without their consent or notification. Specifically, do such actions, which involve treating these States-issued Real

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non-Prisoner)

Identifications Driver's license[s] Card[s], as a private property subject to an eminent domain for a public use, constitute a violations of a citizens' constitutional rights under a Bivens claim?

8. Whether the United States citizens-issued [Real ID] Driver's Licenses or States Identification Card[s] issued by the Department of Transportations (DOTs) be considered private property rather than granted privileges by the states? If so, are they subject to an eminent domain for a public use, and does their seizures without due process and just compensation violates the Takings Clause of the Fifth Amendment?

9. Did the Official State Defendants, by using a[n] fictitious, similar, or identical names (and in some cases, legally changing their names to match those of the North Dakota States' citizens), cause a civil actions under the "Taking" clause and identification of goods segregations by obtaining a duplicated copies of the North Dakota States' citizens' Department of Transportation (DOT) issued [Real] Identification Driver License[s] or States Identification Cards without their consents or notifications? Does this action constitute a violations of the Title 42 U.S.C. § 1983 under the color of state law, and a Bivens claims under the color of federal authority?

These questions are pivotal in addressing the core issues of justice, fairness, and constitutional rights within our legal system, and their resolution holds profound implications for the rights and liberties of all citizens.

**IV.    Statement of Claim.**

State as briefly as possible the facts of your case. Describe how each defendant was personally - in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

**A.  Where did the events giving rise to your claim[s] occur?**

The events occurred at Illinois Department of Motor Vehicle, Headquarter, located at 2701 South Dirksen Parkway, in the City of Springfield, in the State of Illinois, and in the Zip Code area of 62723.

**B.  What date and approximate time did the events giving rise to your claim[s] occur?**
The events occurred on April 20, 2018, at approximately 09:15 AM.

**C.  What are the facts underlying your claim[s]?**

On April 20, 2018, the Plaintiff had visited the Illinois Department of Motor Vehicle (IDMV) headquarters in order to investigate an ongoing issues with the Plaintiff personal identifiable information (PII) and forensic biometrics with her Illinois-issued Driver License card. And, the Plaintiff had noticed each time she updated her Illinois-issued Driver License Card due from change

in her address or her Illinois-issued Driver License Card was about to expire. The Plaintiff had experienced the IDMV's employees will repeatedly re-enter her PII data information during each visits, raising concerns about a misidentification and the accuracy of her IDMV data information records account. During the Plaintiff visit at the IDMV headquarter dated on April 20, 2018, she was given a report indicating her Illinois-issued Driver license cards were always suspended after she had updated it, which the Plaintiff believes are part of a[n] unlawful, and deliberate efforts to misrepresents her Illinois-issued Driver license Cards, as biological male from birth, despite her biological female birth sex and gender identity. And, the Plaintiff had encountered further issues when a security employee mistakenly identified her as male while at the IDMV headquarter. The Plaintiff had suspected that her Illinois-issued Driver License cards has been misused, as an eminent domain for a public use by an IDMV employees and others, leading to wrongful suspensions and changes to her IDMV-issued Driver License Cards' records account. These misrepresentations had caused her severe distresses and had severely affected her civil rights, leading her to the filing of the Illinois Office of the Secretary of State, Office of the Inspector General complaint dated on July 2, 2018 (See Exhibit A1) for the Plaintiff seeking a forensic biometrics audit to verify her IDMV-issued Driver License Cards' and protect her IDMV-issued Driver License Cards' records account. Seeking clarifications and the reasons why the Plaintiff's IDMV-issued Driver License Cards have consistently been suspended, nullified, or voided, she wrote to the Illinois Office of the Secretary of State, Office of the Inspector General dated on July 2, 2018 (See Exhibit A1). The Plaintiff received a written response from the Illinois Office of the Secretary of State, Office of the Inspector General dated on July 8, 2018 (See Exhibit A2).

After the Plaintiff had transferred her IDMV-issued Driver License Card to the North Dakota Department of Transportation, Driver License[s] Division in order to obtain a Real Driver License Identification Card, her problems persist from the IDMV misrepresentations of Illinois-issued Driver License Cards problems that continue into the transferred of the Plaintiff's North Dakota Department of Transportation, Driver License[s] Division when the Plaintiff had transferred her IDMV-issued Driver License Card to the North Dakota-issued Real Driver License Identification Card. She had experienced deliberate suspensions, nullifications, and voidances of her North Dakota-issued Real Driver License Identification Card[s] without due process of the law or legal notifications from the North Dakota Department of Transportation, Driver License[s] Division.

**A. Where did the events giving rise to your claim[s] occur?**

The events occurred at the North Dakota Department of Transportation, Driver License[s] Division, located at 503 38th Street, in the City of Fargo, in the State of North Dakota, and in the Zip Code area of 58103. A few months later, this particular office was closed, but the closing date is unknown to the Plaintiff.

**B. What date and approximate time did the events giving rise to your claim[s] occur?**

The date and time when the Plaintiff had gone to transfer her State of Illinois-issued Driver License[s] to the North Dakota-issued Real Identification card event occurred and dated on May 15, 2019 between the hours from 09:49 am to 11:10am with numerous surveillance cameras located inside the North Dakota Department of Transportation, Driver License[s] Division that gives rise to her constitutional rights claims.

### C.  What are the facts underlying your claim[s]?

The Plaintiff arrived at the main office of the North Dakota Department of Transportation, Driver License Division, located at 503 38th St S, Fargo, North Dakota, 58103, around about 09:49 am dated on May 15, 2019. Her purpose was to transfer her Illinois-issued Driver License to a Real Identification card issued by the State of North Dakota. While waiting in the lobby, she completed the "Application for North Dakota Drivers License, Permit, or Identification" form application. However, she inadvertently signed the Application for North Dakota Drivers License, Permit, or Identification" form application before the Driver Examiner Agent requested it, and the Plaintiff had taken a photograph of her Application for North Dakota Drivers License, Permit, or Identification" form application, as her evidence. (See Exhibit B1) When the Plaintiff assigned North Dakota's Driver License[s] Division number, 924, was called, she approached the window, where a surveillance camera was positioned above on her right side. (See Exhibit B2) The North Dakota's Driver Examiner Agent requested the Plaintiff's form application and Illinois Driver's License, which she surrendered to the North Dakota's Driver Examiner Agent. The North Dakota's Driver Examiner Agent then examined the Plaintiff's United States Passport and entered her information into the North Dakota's Driver License[s] Division system. Next, the Agent asked for the Plaintiff's Illinois birth certificate, which she provided, and the North Dakota's Driver Examiner Agent entered the details.

Subsequently, the North Dakota's Driver Examiner Agent requested her Goldmark contractual apartment rental lease agreement and State Farm Rental Insurance, which the Plaintiff had submitted to the North Dakota's Driver Examiner Agent. After examining these documents, the North Dakota's Driver Examiner Agent entered their information into the system than the North Dakota's Driver Examiner Agent had asked the Plaintiff to sign her signature onto the Application for North Dakota Drivers' License, Permit, or Identification" form application in front of her on the side sense the Plaintiff had mistakenly signed her signature onto the Application for the North Dakota Drivers License, Permit, or Identification" form application while waiting in the North Dakota's Driver License[s] Division lobby. The North Dakota's Driver Examiner Agent then temporarily left her desk to make copies of all the provided identification documents. Upon her return, the Plaintiff noticed peculiar deep blue very tiny dots onto her United States Passport, which she speculated to be a National Security feature, presumably added after the North Dakota's Driver Examiner Agent had made a copy, but those deep blue very tiny dots were not there before the Plaintiff had given to the North Dakota's Driver Examiner Agent.

The Plaintiff's situation unfolded as follows: Initially, when the North Dakota's Driver Examiner Agent from the North Dakota Driver License[s] Division had captured the Plaintiff's photograph for the North Dakota state-issued Real Identification Driver License Card. Subsequently, another North Dakota's Driver Examiner Agent approached the photographing device and informed the Plaintiff that her eyes had been closed in the initial image, without presenting any evidence of this discrepancy of the Plaintiff's North Dakota State-issued Real Identification Driver License Card.

And, the Plaintiff was required to stand before the North Dakota Driver License[s] Division's camera once more to capture a second photograph of her North Dakota State-issued Real Identification Driver License Card. This time, the Plaintiff ensured her eyes remained open during the process. Notably, each photograph produced for the Plaintiff's North Dakota State-issued Real Identification Driver License Card is distinguished by a unique "Document Discriminator" identifier,

denoted as "DD," which differs from any previous "DD" identifier associated with the Plaintiff's North Dakota State-issued Real Identification Driver License Card dated on May 15, 2019, in her property possession.

Also, the Plaintiff's first North Dakota State-issued Real Identification Driver License Card, which allegedly depicted closed eyes, was designated an "ACTIVE" license status. Conversely, the second card, now in the Plaintiff's possession, bears a license status marked as "LI#," prompting the Plaintiff to speculate that this designation signifies a nullified status shown onto the Lexis Nexis Risk Solutions Report Case Number, 103114521 dated on April 7, 2024. For further elucidation, reference can be made to the Plaintiff's Lexis Nexis Risk Solutions Report Case Number, 103114521 dated April 7, 2024, outlined in Exhibit B3.

## A.  Where did the events giving rise to your claim[s] occur?

The events took place at the Plaintiff's residential apartment unit, 205, located at 2432 20th Ave S, Apt. 205, Fargo, North Dakota, 58103.

## B.  What date and approximate time did the events giving rise to your claim[s] occur?

The events occurred on November 8, 2019, at approximately 05:31 PM.

## C.  What are the facts underlying your claim[s]?

On November 4, 2019, the Plaintiff had ordered her birth certificate from the VitalChek through the Illinois Department of Public Health's ("IDPH") website and paid for the VitalChek birth certificate with a debit card. On November 7, 2019, the Plaintiff had received the UPS notification that her package was scheduled for delivery dated on November 8, 2019. The Plaintiff went to Walmart for groceries, anticipating the arrival of her VitalChek envelope containing her birth certificate the very next day. (See Exhibit C1)

While waiting at the Walmart bus stop located at 4731 13th Ave S, Fargo, North Dakota, 58103, at approximately 4:55 pm, the Plaintiff had noticed a crowd of over fifty people. When the MATBUS route 15 arrived, it filled up quickly, forcing the Plaintiff to stand and hold onto a rail because there were no more bus seats available while enduring other passengers' intolerant remarks about her biological female birth sex not being a biological male birth sex had echoed throughout the MATBUS route 15 bus in an angry continuous rants from many of the bus passengers Defendants. However, by the evening of November 8, 2019, the Plaintiff had not received any update from the UPS located in the Fargo, North Dakota jurisdiction. And, upon checking the VitalChek tracking number 1Z0380A73516065605, (See Exhibit C2) and the UPS tracking number website had revealed the Plaintiff VitalChek's package that contains her official VitalChek's birth certificate had been "returned to sender (IDPH) without any legal notification from the UPS to why her VitalChek package was returned to the sender (IDPH).

The Plaintiff had contacted the UPS customer service who had informed her that a disruption in the delivery service, possibly due to an electrical power outage in the State of Illinois or Florida had caused the package to be returned to the sender (IDPH). Despite expressing the Plaintiff concerns about the sensitive nature of the VitalChek birth certificate document and the possibility of an

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non-Prisoner)

identity theft problems, the UPS had apologized but maintained that the package was returned due to delivery interruptions. (See Exhibit C2)

Following this, the Plaintiff had contacted the VitalChek customer service. A representative named Julie had confirmed that her package was returned dated on November 8, 2019, and promised to resend the Plaintiff's VitalChek birth certificate without any additional shipping charges. The Plaintiff had accepted this solution. The Plaintiff believe that the UPS may have unlawfully compromised her VitalChek birth certificate package that have led to her identity thefts problems, given the sensitive nature of the VitalChek birth certificate document.

On or about November 25, 2019, the Plaintiff contacted the IDPH again because she had not received her resent VitalChek birth certificate. This time, another female employee at the IDPH answered her call regarding the missing VitalChek birth certificate. The IDPH's employee had to ensure the return of the VitalChek birth certificate by checking another IDPH's employee's desk before sending the Plaintiff a new one. The female IDPH's employee had requested to place the Plaintiff's call on hold for a few minutes. When the female IDPH's employee had returned, she was almost hysterical from what she had discovered. The female IDPH's employee had asked for the Plaintiff's phone number to call her back, after she immediately contact the National Security Agency. When the female IDPH's employee called the Plaintiff back, she had explained that the Plaintiff's online transactional purchase for a VitalChek order number xxxxx530, for one birth certificate sent via the USPS delivery distribution channel to the UPS delivery service, was severely compromised. And, the Plaintiff's VitalChek birth certificate was not in the same envelope and was torn into pieces. When the female IDPH's employee put the torn pieces together like a puzzle, she had discovered that someone employed at either the UPS or USPS had unlawfully, intentionally, knowingly, and willfully crossed out the Plaintiff's biological female birth sex and typed "MALE" in big letters, causing the Plaintiff's VitalChek birth certificate to be severely compromised and resulting in a National Security breach. This led the female IDPH's employee to contact the National Security Agency and forced the IDPH to change the Plaintiff's birth certificate numbers identifier, which is evidence of the Plaintiff gender-based discrimination against her biological female birth sex and gender identity. The female IDPH's employee officially sent out the Plaintiff's VitalChek birth certificate on or about November 25, 2019, and the Plaintiff received it on or about November 26, 2019. (See Exhibit xx).

A. **Where did the events giving rise to your claim[s] occur?**

The events occurred at the Red Roof Plus + Chicago, located at 1698 W. Diehl Road, in the City of Naperville, in the State of Illinois, and in the Zip Code area of 60563.

B. **What date and approximate time did the events giving rise to your claim[s] occur?**
The events occurred on March 21, 2023, at approximately 08:22 PM.

C. **What are the facts underlying your claim[s]?**

The Plaintiff arrived at the main office of the Red Roof Plus+ hotel, located at 1698 W. Diehl Road, Naperville, Illinois, 60563, on or about 8:22 pm dated on March 21, 2023. Upon the Plaintiff arrival, the front desk clerk requested the Plaintiff's North Dakota State-issued Real Identification Driver License Card to confirm her reservation and scan its back. However, upon scanning, the hotel's

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non-Prisoner)

system populated an unfamiliar email address, "dtrvdj4bh5@m.expediapartnercental.com," instead of the Plaintiff's personal email onto the Red Roof Plus+ Plaintiff's invoice. It appears that the Plaintiff's North Dakota State-issued Real Identification Driver License Card, when scanned, incorrectly filled the Red Roof Plus+ invoice form with data information from the State of North Dakota Department of Transportation, Driver License[s] Division, suggesting potential manipulation or alteration of her data information by the North Dakota Department of Transportation, Driver Examiner Agent[s]. Additionally, the Plaintiff's North Dakota State-issued Real Identification Driver License Card is connected to the National Security Clearance database system, automatically feeds her data information onto a company forms when scanned, indicating a link to a National Security companies clearance have been compromises with a fictitious data information. (See Exhibit D1)

**A. Where did the events giving rise to your claim[s] occur?**

The events occurred at the Red Roof Plus + Chicago, located at 1698 W. Diehl Road, Naperville, Illinois, 60563.

**B. What date and approximate time did the events giving rise to your claim[s] occur?**

The events occurred on January 30, 2024, at approximately 01:06 AM.

**C. What are the facts underlying your claim[s]?**

The Plaintiff arrived at the main office of the Red Roof Plus+ hotel, located at 1698 W. Diehl Road, Naperville, Illinois, 60563, on or about 01:06 am dated on January 30, 2024. Unfortunately, an unexpected and uncontrollable delay occurred, disrupting the Amtrak's normal schedule departure dated on January 29, 2024, at 3:29 a.m. And, the Plaintiff was compelled to cancel her two-day hotel reservation through Expedia at the Red Roof Inn Plus ("Red Roof") spanning from January 29, 2024, to January 31, 2024, in the amount of $122.36. And, upon the Plaintiff arrival, the front desk clerk had requested the Plaintiff's North Dakota State-issued Real Identification Driver License Card in order to confirm her reservation and scan its back, the Plaintiff had to pay the full price for a two-day reservation stay at the Red Roof Plus+ hotel. However, upon the Red Roof's front desk clerk scanning of the Plaintiff's North Dakota State-issued Real Identification Driver License Card, the hotel's system did not populate any of the Plaintiff's personal email address and phone number onto her Red Roof Plus+ invoice. It appears that the Plaintiff's North Dakota State-issued Real Identification Driver License Card, when scanned did not filled the Red Roof Plus+ invoice form with her data information from the State of North Dakota Department of Transportation, Driver License[s] Division database system, suggesting potential deletion, manipulation or alteration of the Plaintiff data information by the North Dakota Department of Transportation, Driver Examiner Agent[s]. Additionally, the Plaintiff's North Dakota State-issued Real Identification Driver License Card is connected to the National Security Clearance database system, automatically feeding her data information onto the company forms when scanned, indicating a link to the National Security company clearance have been compromises with a fictitious data information. See Exhibit E1.

**A. Where did the events giving rise to your claim(s) occur?**

The events took place at the Plaintiff's residential apartment unit, 205, located at 2432 20th Ave S, Apt. 205, Fargo, North Dakota, 58103.

**B. What date and approximate time did the events giving rise to your claim(s) occur?**

The events occurred on April 1, 2024, at approximately 10:58 AM.

**C. What are the facts underlying your claim(s)?**

On April 1, 2024, at approximately 10:58 AM, the Plaintiff had accessed her online State Farm Insurance account in order to pay for her monthly rental policy insurance and retrieve a current copy of her State Farm Insurance statement and the State Farm Renewal Declarations Policy Letter. This letter should have been delivered by the USPS on or about March 23, 2023. However, the Plaintiff did not receive the expected USPS Informed Delivery notification with the State Farm Insurance image attached via email. Despite waiting patiently, the Plaintiff did not receive the yearly State Farm Renewal Declarations Policy Letter, which should have arrived via the USPS delivered mail letter item on or about March 28, 2024. The had Plaintiff suspected that the letter was either stolen from her residential mailbox number, 205 or unlawfully substituted with junk mails around about this time frame of reference. This raised the Plaintiff concerns about an identity thefts problems involving the USPS' Employees Defendants who are/were participating in a misappropriating the Plaintiff's USPS delivered mail letter item for an illicit purposes, such as forcing the Plaintiff into a labor and sex trafficking trades or using the Plaintiff's State Farm Renewal Declarations Policy Letter, as evidence in order to forged copies of her North Dakota State-issued Real Identification Driver License Card from the North Dakota Department of Transportation, Driver License[s] Division without the Plaintiff legal consents or lawful authorities.

The Plaintiff's suspicion was confirmed when she had contacted her State Farm Insurance Agent dated on April 1, 2024, to inquire about her State Farm Renewal Declarations Policy missing letter. The State Farm Insurance's agent had confirmed that the State Farm Renewal Declarations Policy letter was sent out dated on March 13, 2024, and should have been delivered within ten days on or about March 23, 2024. This raises the Plaintiff further suspicions about the integrity of the USPS delivered and sent mail letters items services within their official legal jurisdictions.

Additionally, the Plaintiff suspects that the USPS' Employees Defendants had possibly collaborated with the Southview Village Apartments' tenants who are involved in an identity thefts conspiracy in order to steal the Plaintiff's USPS delivered mail letters items. These actions may stem from a gender-based discrimination against the Plaintiff, who is perceived unjustly, as a homosexual male despite being a biological female sex and gender identity.

The Plaintiff had filed a complaint with the United States Postal Service, Office of Inspector General, dated on April 1, 2024, at approximately 5:50 PM. (See Exhibit F1)

**A. Where did the events giving rise to your claim[s] occur?**

The events occurred at the Plaintiff's residential mailbox, number 205, located at 2432 20th Ave S, Apt. 205, Fargo, North Dakota, 58103. The item received was from Lexis Nexis Risk Solutions Consumer Center. See Exhibit B3.

**B. What date and approximate time did the events giving rise to your claim[s] occur?**

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non-Prisoner)

The events occurred on April 15, 2024, at approximately 04:30 PM when the Plaintiff retrieved her USPS-delivered mailed letter.

**C. What are the facts underlying your claim[s]?**

After, the Plaintiff had returned to her residential apartment unit, 205 from her residential building foyer location where all the USPS residential mailboxes are located, and, after retrieving her Lexis Nexis Risk Solutions Consumer Center credit report dated on April 7, 2024. The Plaintiff had immediately opened the Lexis Nexis Risk Solutions Consumer Center credit report which was assigned a case number, 103114521 and she had carefully review all contents pages until she had reached "Section 5" of page 10, titled the "Driver License Records" and the Plaintiff had discovered , "Record 1" of the duplicate entries onto the Lexis Nexis Risk Solutions Consumer Center credit report's "Driver License Records" section 5 have presented discriminatory discrepancies between "Record 1" and "Record 2". The first record entry, whether or not suspended voided, or nullified (the Plaintiff is not sure) had mirrored the information onto the Plaintiff authentic North Dakota Real Identification Driver License card number, xxx-xx-xxxx, barring discrepancies in her license height of "508", and license class of "D". However, the Plaintiff's license status as, "LI#" is not shown onto her authentic North Dakota Real Identification Driver License card number, xxx-xx-xxxx that states whether it is an "ACTIVE" driver license or not. These incongruities pose potential legal and discriminatory biometric profile problems, as the Plaintiff authentic North Dakota Real Identification Driver License card number, xxx-xx-xxxx that in her possession, indicates a height of "508", and a license class of "D", and does not specify a license status upon it.

Additionally, the "Record 1" entry onto the Lexis Nexis Risk Solutions Consumer Center credit report fails to accurately represents the status of the Plaintiff's North Dakota-issued Real Identification Driver License card number, xxx-xx-xxxx, labeling it as "LI1#", while the "Record 2" entry erroneously listed the Plaintiff's North Dakota-issued Real Identification Driver License card[s] number, xxx-xx-xxxx not in her legal possession[s] onto the Lexis Nexis Risk Solutions Consumer Center credit report, as a license status of "ACTIVE" with the license height of "505", and a license class of "DRVD," which the Plaintiff does not legally possess. These discrepancies implies that the "Record 2" is a duplication of the Plaintiff's North Dakota-issued Real Identification Driver License card[s] number, xxx-xx-xxxx has/had been unlawfully, intentionally, knowingly and willfully issued by the North Dakota Department of Transportation, Driver License[s] Division's Driver Examiner Agent[s] who has/had produced, generated or created in order to supersede or substitute the Plaintiff authentic North Dakota-issued Real Identification Driver License card number, xxx-xx-xxxx. In her possession for an eminent domain for an identification cards public use by an unjustly seizing the Plaintiff true-North Dakota-issued Real Identification Driver License card, as a backdoor National Security background check clearances methods or schemes by ways of associating the Plaintiff authentic North Dakota-issued Real Identification Driver License card number, xxx-xx-xxxx with those forged North Dakota Department of Transportation, Driver License[s] Division-issued Real Identification Driver License card[s]. And, each time a forge North Dakota-issued Real Identification Driver License card is/are produced, generated or created of the Plaintiff authentic North Dakota-issued Real Identification Driver License card number, xxx-xx-xxxx account will have assigned between two digits consecutive numbering counter hidden within the "Document Discriminator" identifier known as "DD" from a paid or free transactional distributions to those Defendants using a[n] fictitious, similar or identical names to match the

Plaintiff legal name. And, those Plaintiff forged North Dakota-issued Real Identification Driver License card[s] number, xxx-xx-xxxx, account will generate a new "DD" number identifier each time the Plaintiff's North Dakota-issued Real Identification Driver License Card is produced by the North Dakota Department of Transportation, Driver License[s] Division database system. Even if, the Plaintiff authentic North Dakota-issued Real Identification Driver License card number, xxx-xx-xxxx account is/are unlawfully compromised and printed out for an eminent domain distributions, for public use will update the "DD" identifier number count using algorithm written codes language in order to automatically create a new "DD" identifier number hidden within the "DD" identifier code onto the Plaintiff forged North Dakota-issued Real Identification Driver License card[s]. (See Exhibit E3)

For instance, when the North Dakota State's Department of Transportation, Driver License[s] Division's Driver Examiner Agent[s] who has/had unfairly imposed biases role preferences based on their subjective gender-based discriminatory perceptions practices of the Plaintiff authentic North Dakota-issued Real Identification Driver License card number, xxx-xx-xxxx photograph dated on May 15, 2019, should have look like in gender-based appearance. And, the North Dakota Department of Transportation, Driver License[s] Division's Driver Examiner Agent[s] has/had unlawfully, intentionally, knowingly and willfully engaged in a duplication procedures by ways of altering the Plaintiff's identifier data information details onto the North Dakota Department of Transportation, Driver License[s] Division database system by falsely claiming her eyes were closed in the first initial photograph without presenting evidence to the Plaintiff in order to forge the Plaintiff North Dakota-issued Real Identification Driver License card number, xxx-xx-xxxx with a[n] fictitious, similar, or identical named Defendants' photographs.

These manipulations not only facilitated fraudulent backdoor National Security background checks clearances for those Defendants using a[n] fictitious, similar or identical names who has/had unlawfully match to the Plaintiff legal name but also resulted in a suspensions, nullifications or voidances of the Plaintiff authentic North Dakota State-issued Real Identification Driver License Card number, xxx-xx-xxxx in her legal possession. Such, Department of Transportation, Driver License[s] Division "taking" actions constitute a violations of the Plaintiff private property rights for a public use in the State of North Dakota. And placing the plaintiff into a state of a habeas corpus status with the Department of Transportation, Driver License[s] Division's Driver Examiner Agent[s] causing her civil rights' infringements and identity thefts problems. In order to conceal the Department of Transportation, Driver License[s] Division's Driver Examiner Agent[s] who lacks any judicial system oversight procedures against the Plaintiff authentic North Dakota-issued Real Identification Driver License card number, (xxx-xx-xxxx). This has left the Plaintiff without a valid North Dakota State-issued Real Identification Driver License Card number, xxx-xx-xxxx and no North Dakota State's citizenship status within the North Dakota State that constituting a severe infringement on her civil rights.

**A. Where did the events giving rise to your claim[s] occur?**

The events occurred at the Plaintiff's residential apartment unit, 205, located at 2432 20th Ave S, Apt. 205, Fargo, North Dakota, 58103.

**B. What date and approximate time did the events giving rise to your claim[s] occur?**

The events occurred on June 18, 2024, at approximately 02:30 PM when the Plaintiff had written how to audit and reconcile the North Dakota Department of Transportation, Driver License[s] Division database system's "Document Discriminator" identifier known as a "DD" located onto her North Dakota State-issued Real Identification Driver License card.

**C.  What are the facts underlying your claim[s]?**

On June 18, 2024, the Plaintiff discovered an official compliance and audit method to reconcile her North Dakota State-issued Real Identification Driver License Card, issued on May 15, 2019, with the current version issued on April 29, 2024. Please note, for the National Security validations reasons, the Plaintiff will not disclose the actual "DD" identifier characters. Instead, the Plaintiff will only use a fictitious "DD" identifier characters used solely for an official court judiciary oversight reviews and analytic studies on how to reconcile and audit a States-issued [Real] Identification Driver Licenses and States Identification Cards, utilizing the "DD" identifier consecutive numbering counter hidden within the characters identifier.

If the "DD" identifier characters matched each other between the two dates than those identifier characters have received strikethrough characters are as follows:

- Date Issued on May 15, 2019:
  Real ID Driver License Card's DD Identifier: ~~1APA121119IJ52489gD78NDR~~

- Date Issued on April 29, 2024:
  Real ID Driver License Card's DD Identifier: ~~1APA121119IJ53089gD78NDR~~

In this example, if the "DD" identifier characters are different ("24" vs "30") between the two dates, indicating they do not match, and there are no strikethrough characters given.

Therefore, based on the criteria for the States-issued [Real] Identification Driver Licenses and States Identification Cards:

- The "DD" identifier characters are unreconciled because they are not identical. And, when the Plaintiff was issued her North Dakota State-issued Real Identification Driver License Card dated on May 15, 2019, and the unreconciled "DD" identifier characters started with the number count 24. Upon updating her North Dakota State-issued Real Identification Driver License Card dated on April 29, 2024, for which an unreconciled "DD" identifier characters ended with the number count 30. This discrepancy suggests that the North Dakota Department of Transportation, Driver License[s] Division had unlawfully produced, generated, and distributed five forged North Dakota State-issued Real Identification Driver License Cards. These cards were issued under a[n] fictitious, similar, or identical named Defendants who had unlawfully, intentionally, knowingly and willfully matched to the Plaintiff's legal name without her legal consent or lawful authority. Furthermore, the Plaintiff did not receive any notifications from the North Dakota Department of Transportation, Driver License[s] Division, indicating that her North Dakota State-issued Real Identification Driver License Card dated on May 15, 2019, had been unlawfully suspended, nullified, or voided for no apparent reasons by the North Dakota Department of Transportation, Driver License[s] Division.

- Additionally, the consecutive numbering from "01" to "23" in the "DD" identifier characters indicates that the North Dakota Department of Transportation, Driver License[s] Division's Driver Examiner Agent[s] had already issued multiple forged duplicates of the Plaintiff's North Dakota State-issued [Real] Driver's License and/or State Identification cards before she had moved to the State of North Dakota dated on May 1, 2019, from the State of Illinois. This consecutive numbering suggests that these North Dakota State-issued [Real] Driver License and/or State Identification cards were produced, generated, created and duplicated before the Plaintiff officially obtained her North Dakota State-issued Real Identification Driver License Card dated on May 15, 2019, to which she was assigned the "DD" identifier character numbers count starting at "24" at the Driver License Division's business located at 503 38th Street, Fargo, North Dakota 58103 where the Plaintiff had received her North Dakota State-issued Real Identification Driver License Card. These continuous breach violations had jeopardized the Plaintiff's National Security background checks clearances. So, the Plaintiff questions remain whom are/were those fictitious, similar, or identical named Defendants who had unlawfully, intentionally, knowingly and willfully received her North Dakota State-issued [Real] Driver License and/or State Identification cards before May 15, 2019?

The consecutive numbering counter "DD" problems remains unresolved, as the identifier characters have not matched in a consecutive order between the two specified dates and above the May 15, 2019 dates, indicating that the Plaintiff's North Dakota State-issued Real Identification Driver License Cards have been forged and distributed without being in her legal private properties possessions.

In essence, an official complaints or events are crucial in establishing these verifiable legitimacies of the Plaintiff's civil cause of actions for her constitutional rights. However, the Plaintiff has not listed all her official complaints or events in this statement of claims. The Plaintiff may amend this complaint with an "Amended Complaint" if necessary, in the future.

## V.   Injuries.

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

The Plaintiff's civil cause of actions for an actual and imminent injuries arises under the Title 42 U.S.C. § 1983 and Bivens under the color of Federal Authority against the Official State and Federal Defendants. And, the Official State and Federal Defendants have inaccurately or mishandled the Plaintiff's North Dakota State-issued State Real Identification Driver License Card[s] and using it for an eminent domain for a public use and fraudulent activities purposes. These actions involve redistributing the Plaintiff's North Dakota State-issued Real Identification Driver License Card[s] to those Defendants who have adopted pseudonymous, resembling, or identical identities to the Plaintiff's lawful name, illicitly replicating her signatures onto an official identification of goods instruments documentations without her legal consents.

**These have caused injuries immediate harm to the Plaintiff through:**

1. identity thefts,

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non-Prisoner)

2. gender-based discriminations (for not conforming to an Official State and Federal Defendants who assigned attributes, characteristics, or roles against the Plaintiff biological female birth sex and gender identity preferences),

3. unlawful search and seizure practices,

4. ongoing harm related to her North Dakota State-issued Real Identification Driver License Card[s] unlawfully distributed as an eminent domain for public use within the jurisdiction of the North Dakota State's Department of Transportation, Driver Licenses Division,

5. suspension, nullification, and voidance of the Plaintiff's North Dakota State-issued Real Identification Driver License Card[s], placing her in a habeas corpus infringement status due to their pretense of her lack of legal residency in the state of North Dakota, leading to some local enforcement officers not responding to the Plaintiff dispatch calls and handling her legal incidents off local law enforcement jurisdictions grids, and incommunicado from their law enforcement communication apparatuses or devices, thus placing her in an imminent danger,

6. false and fraudulent misrepresentation statements that the Plaintiff lacks a stable, consistent, and suitable nighttime dwelling, which place her in an ongoing imminent danger.

The Plaintiff alleges that mishandling of her North Dakota State-issued Real Identification Driver License Card[s] by the Official State and Federal Defendants caused significant harm against her. These includes identity thefts, gender-based discriminations, unlawful search and seizure, and other fraudulent activities. And, the suspension of the Plaintiff's North Dakota State-issued Real Identification Driver License Card[s] have caused false representations about her living situations further intensify this threat of a fair housing discriminations, resulting in a local law enforcement Officer[s] not responding to the Plaintiff calls and placing her in an imminent danger. These ongoing continuous redistributions of the Plaintiff's North Dakota State-issued Real Identification Driver License Card[s] to those a[n] fictitious, similar, or identical named Defendants increase these ongoing threats and violations under the Title 42 U.S.C. § 1983,  Bivens under the color of Federal Authority, Fourth, Fifth, thirteenth and Fourteenth Amendments.

The Plaintiff claims of an intentional infliction of emotional distress ("IIED") addresses a critical area of the tort law where the misconducts or wrongdoings of the Official State and Federal Defendants goes beyond mere negligence or inadvertence, reaching a level of an outrageousness which are intolerable in a civilized society. This legal doctrine is particularly relevant in cases where the Plaintiff had suffered severe emotional harm due to a gender-based discriminatory and malicious actions by those Official State and Federal Defendants. In the case at hand, the Plaintiff has experienced such severe distresses stemming from the Official State and Federal Defendants' egregious misconducts or wrongdoings so outrageous it will shock a person senses. And, these misconducts or wrongdoings includes an unlawful distributions of the Plaintiff's North Dakota State-issued Real Identification Driver License Card[s] and the imposition of a[n] attributes, characteristics, or roles based on gender, color, sexual orientation, ethnicity, sex, disability, and gender-based discriminations stereotypes.

To establish IIED the Plaintiff must demonstrate several key elements: the Defendants' specific actions, the outrageous nature of these actions, the purposeful or reckless intent behind them, and the severe emotional distresses caused. In this instance, the Official State and Federal Defendants' behavior was not only gender-based discriminatory but also violated the Plaintiff's dignity and constitutional rights. The Plaintiff's distresses are compounded by gender-based systemic discriminations, manifesting in a pervasive feelings of worthlessness, emotional distresses, anxieties, and severe depressions. These elements collectively underscore the severe impact of the Official State and Federal Defendants' misconducts or wrongdoings and form the basis of the Plaintiff civil cause of actions claims for an intentional infliction of emotional distresses tort.

**The Plaintiff intentional infliction of emotional distresses are as follows:**

1. **The Official State and Federal Defendants Acts:**

   The Official State and Federal Defendants engaged in specific actions that directly targeted the Plaintiff. These actions include assigning attributes, characteristics, or roles based on gender-based stereotypes related to the Plaintiff's color, sexual orientation, ethnicity, sex, gender and disability rather than acknowledging her biological female birth sex and gender identity preferences.

2. **The Official State and Federal Defendants Misconducts or Wrongdoings were Outrageous:**

   The Official State and Federal Defendants' misconducts or wrongdoings were extreme and outrageous, exceeding all bounds of decency in a civilized society. This includes an unlawful distribution of the Plaintiff's North Dakota State-issued Real Identification Driver License Card[s], held as an eminent domain for public use without her legal consents and due process of the law. Such actions are beyond what are considered acceptable behavior and are deeply offensive and harmful to the Plaintiff.

3. **The Official State and Federal Defendants Acts Purposely or Recklessly, Causing the Plaintiff Emotional Distress So Severe that it Could be Expected to Adversely Affect Mental Health:**

   The Official State Federal Defendants acted with either a[n] intention or reckless disregard of the likelihood that their actions would cause the Plaintiff severe emotional distresses. By enforcing the Plaintiff to coexist, cohabitate or share her North Dakota State-issued Real Identification Driver License Card[s] that trigger a compulsory conditions of an involuntary servitude segregations gender-based biological birth sex discriminations and distributing the Plaintiff personal identification of goods instruments unlawfully to a[n] fictitious, similar and identical named Defendants' causing a "Taking Clause" claims knew or should have known that their misconducts or wrongdoings would likely cause the Plaintiff severe emotional harm and distresses with identity thefts, harassments, stalking, threats, physical assaults, and devices interferences problems.

4. **The Official State and Federal Defendants Misconducts and Wrongdoings Causes Such Distress on an Intentional Infliction of Emotional Distress for Gender, Color, Sexual Orientation, Ethnicity, Sex, Disability and Gender-based Discriminations:**

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non-Prisoner)

The Official State and Federal Defendants' misconducts or wrongdoings specifically targeted the Plaintiff's North Dakota State-issued Real Identification Driver License Card[s] related to her color, sexual orientation, ethnicity, sex, disability, and gender identity. By assigning attributes and roles contrary to her self-identified female gender and biological female birth sex due from the Official State and Federal Defendants who caused the Plaintiff severe emotional distresses. These server distresses are a direct result of an intentional and gender-based discriminatory actions of the Official State and Federal Defendants.

5. **The Plaintiff is Experiencing Gender-Based Systemic Discrimination in Institutions or Everyday Encounters, Leading to Feelings of a[n] Worthlessness, Anxiety, and Depression:**

   The Plaintiff's emotional severe distresses are compounded by gender-based systemic discriminations experienced in a various State or Federal governmental and non-governmental agencies, and everyday encounters. These ongoing gender-based discriminations has/had resulted in a significant psychological effects, including feelings of a[n] worthlessness, emotional distresses, anxieties, severe depressions, and physical assaults or abuses by a medical professional persons. These adverse mental health effects are directly linked to the Official State and Federal Defendants' gender-based discriminatory ongoing misconducts or wrongdoings.

6. **Unlawful Distribution of Plaintiff's North Dakota State-issued Real Identification Driver License Card[s]:**

   An unlawful distribution of the Plaintiff's North Dakota State-issued Real Identification Driver License Card[s] by the North Dakota State's Department of Transportation, Driver License[s] Division, as an eminent domain for the public use only increase or compound to the Plaintiff's emotional distresses. These distributions occurred because the Plaintiff did not conform to the Official State and Federal Defendants' assign specific attributes, characteristics, or roles by a reason of her membership in a societal group of women and men, further highlighting the gender-based discriminatory intents and the resultant harms.

The Plaintiff has established here an intentional infliction of emotional distresses civil cause of actions claims tort by the Official State and Federal Defendants outrageous and gender-based discriminatory actions, including an unlawful distributions of the Plaintiff's North Dakota State-issued Real Identification Driver License Card[s] and the enforcement of their harmful gender-based discriminations are/were intentional or reckless and caused the Plaintiff severe emotional distresses. These distresses are evident in the Plaintiff's mental health struggles, including feelings of a[n] worthlessness, emotional distresses, anxieties, and severe depressions, resulting from an Official State and Federal systemic gender-based discriminations methods or schemes.

VI. **Administrative Procedures.** If applicable, state whether your claim was heard by any administrative agencies: the type of proceeding; the date and place of any proceeding; the outcome of any administrative proceedings.

The Plaintiff filed several complaints with the United States Department of Housing and Urban Development ("HUD") against the Tenant Defendants for their gender-based discriminations. The Plaintiff alleges that her North Dakota State-issued Real ID Driver License Card(s) were unlawfully

used to forge her signatures onto Goldmark rental apartment lease agreements without her consents or acknowledgements. These Goldmark rental apartment lease agreements are/were done under the pretext of an eminent domain for public use while the Plaintiff is/was unaware that her North Dakota State-issued Real Identification Driver License Card[s] had been compromised by the North Dakota Department of Transportation, Driver License Division's Official State Defendants. These compromises led to the Plaintiff rental apartment lease agreements problems with Goldmark. And, the Plaintiff lack of an awareness regarding the forged signatures created a hostile and harassing environments based on gender-based discriminations, prompting her to file the following HUD complaints:

1. **Housing Discrimination Inquiry**
   - **Type of Proceeding:** HUD Inquiry No. 761247
   - **Date and Place of Proceeding:** February 16, 2024
   - **Outcome:** DENIED

2. **Housing Discrimination Inquiry**
   - **Type of Proceeding:** HUD Inquiry No. 652763
   - **Date and Place of Proceeding:** September 10, 2021
   - **Outcome:** DENIED

3. **Housing Discrimination Inquiry**
   - **Type of Proceeding:** HUD Inquiry No. 625021
   - **Date and Place of Proceeding:** January 4, 2021
   - **Outcome:** DENIED

4. **Housing Discrimination Inquiry**
   - **Type of Proceeding:** HUD Inquiry No. 634582
   - **Date and Place of Proceeding:** January 5, 2021
   - **Outcome:** DENIED

5. **Housing Discrimination Inquiry**
   - **Type of Proceeding:** HUD Inquiry No. 594375
   - **Date and Place of Proceeding:** September 20, 2019
   - **Outcome:** DENIED

The Plaintiff had filed two United States Supreme Court cases of a Petition for a Writ of Certiorari are as follows:

1. **Supreme Court Case**
   - **Title:** Sarai H. Ajai, aka Carol M. Willis v. Pennsylvania, et al.
   - **Docketed Date:** December 16, 2016
   - **Lower Court:** The United States Court of Appeals for the Seventh Circuit
   - **Case Number:** 16-1865

- **Decision Date:** June 23, 2016
- **Rehearing Denied:** July 21, 2016
- **Outcome:** Petition for a Writ of Certiorari DENIED on February 17, 2017

   **2. Supreme Court Case**
- **Title:** Sarai Hannah Ajai v. Laramar Management Services, LLC, fka Laramar Group, LLC, dba Hinsdale Lake Terrace Apartments
- **Docketed Date:** August 7, 2017
- **Lower Court:** The United States Court of Appeals for the Seventh Circuit
- **Case Number:** 16-3687
- **Decision Date:** March 2, 2017
- **Outcome:** Petition for a Writ of Certiorari DENIED on October 10, 2017

**VII.    Relief.**

State briefly what you want the court to do for you. Make no legal arguments. Do not cite cases statutes. If requesting money damages , include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

State briefly what you want the court to do for you.

The Plaintiff civil cause of action arises under these facts:

The Official State and Federal Defendants has/had unlawfully, intentionally, knowingly and willfully suspended, nullified, or voided the Plaintiff's North Dakota State's Department of Transportation, Driver License Division-issued Real Identification Driver License Card[s] without due process of law. These actions are/were taken with the intention of causing the Plaintiff harmful and offensive contact or the apprehension thereof towards the Plaintiff.

**The Plaintiff here meets the three legal basis for justifying her entitlement to a permanent and declaratory injunctions reliefs:**

1. **Intentional Actions:** The Official State and Federal Defendants has/had unlawfully, intentionally, knowingly and willfully suspended, nullified, or voided the Plaintiff's North Dakota State's Department of Transportation, Driver License Division-issued Real Identification Driver License Card[s] without her legal consents and receiving any notifications to why her North Dakota State-issued Real Identification Driver License Card[s] was/were suspended, nullified, or voided.

2. **Knowledge and Willfulness:** The Official State and Federal Defendants has/had unlawfully, intentionally, knowingly and willfully understood that these actions would cause significant adverse effects on the Plaintiff safety, security, well-being and mental state.

3. **Harmful or Offensive Impact:** The Official State and Federal Defendants actions resulted in a several detrimental consequences for the Plaintiff's constitutional rights to a civil liberty including:

- Deprivation of rights,
- National Security Fraud,
- False Personations,
- Fair Housing Gender-Based Discriminations,
- Labor and/or Sex Trafficking problems, and
- An inability to maintain active state residency from a forged tenants' rental lease contractual agreement conflicts from a her duplicative North Dakota State-issued Real Identification Driver License card[s] used as an eminent domain for the public use.

These consequences are stemming from the suspension, nullification, or voidance of the Plaintiff's Real Identification Driver License Card[s] issued by the North Dakota State Department of Transportation, Driver License[s] Division.

**Here are the Plaintiff Consequences:**

As a result of the suspension, nullification, voidance of the Plaintiff's North Dakota State's Department of Transportation, Driver License Division-issued Real Identification Driver License Card dated on May 15, 2019, the Plaintiff ceased to exist, as a permanent citizen of the State of North Dakota that imposed an enforced compulsory conditions of involuntary servitude upon the Plaintiff for which unjustly restricting or curtailing her constitutional rights to liberty all stemming from the fictitious, similar and identical named Defendants' "Taking Clause" state infringements are/were perpetrated by the Official State and Federal Defendants.

**Here are the Official State and Federal Defendants Intentions and Effects:**

1. **Economic Redistributions:** The primary intention of the Official State and Federal Defendants are/were to cause an economic redistributions and appropriations away from the Plaintiff's fair housing, educational attainments, employment opportunities, and benefits.
2. **Infringement of the Property Rights:** The actions aimed to infringe upon the Plaintiff's private and personal property rights.
3. **Physical Harms and Discriminations:** The Official State and Federal Defendants intended to inflict physical harms from a gender-based discriminations onto the Plaintiff based on her biological female birth sex and gender identity.
4. **Reputations and Embarrassments:** The Official State and Federal Defendants sought to cause an ongoing injury to the Plaintiff's reputations and public embarrassments due to a continuous stalking, harassments, computer devices interferences, and habitual dislikes of the Plaintiff female biological birth sex and gender identity appearances should have look and behave.

**Here is the Official State and Federal Defendants Element Not of Privilege:**

1. **Legal Authority:** The Official State and Federal Defendants acted within their legal authority to suspend, nullify, or void the Plaintiff's North Dakota State-issued Real Identification Driver License Card[s] without her legal consents, notifications and due process of law.

2. **Regulatory Compliance:** the actions are/were not in compliance with the State of Federal

regulations governing the re-issuance and validity of the Plaintiffs North Dakota State-issued Real Identification Driver License Card[s].

3. **Public Safety and Security:** The Official State and Federal Defendants' actions are/were not intended to maintain the Plaintiff public safety and security, particularly when the Plaintiff's North Dakota State-issued Real Identification Driver License Card[s] was/were found to be an unlawfully distributed to those fictitious, similar or identical named Defendants for a fraudulent and forged activities and compromised by the North Dakota State's Department of Transportation, Driver License[s] Division by an Official State and Federal Defendants without State sending out any legal notifications.

4. **Good Faith and Duty:** the Official State and Federal Defendants did not act in good faith in fulfilling their Official Duty to enforce laws and regulations intended to protect the integrity of State-issuance of the North Dakota identification Card[s].

While the Official State and Federal Defendants' actions has/had significant negative impacts on the Plaintiff, these actions may not be considered and privileged due to their legal authority, compliance with regulations, and the intent to maintain public safety and security. Therefore, the Official State and Federal Defendants has/had acted within the bounds of the official duties to which will justify the otherwise harmful consequences experienced by the Plaintiff of her North Dakota State-issued Real Identification Driver License Card[s] redistributed by the North Dakota State, Driver License[s] Division for an eminent domain for a public use.

**The Plaintiff must satisfy these requirements for seeking a permanent and/or declaratory injunction reliefs from the following:**

1. **Irreparable Injuries**:

   The Plaintiff has/had suffered irreparable injuries due to the actions of both the Official State and Federal Defendants. The mishandling and fraudulent use of the Plaintiff's North Dakota State-issued Real Identification Driver License card[s] by the Official State and Federal Defendants have resulted in:

   - **identity Thefts:** The Plaintiff's personal identity has been used, causing severe identity thefts, personal, financial, fair housing, educational attainments, employment or business opportunities and benefits harms.

   - **Gender-based Discriminations:** The Plaintiff has/had faced discrimination based on a non-conformity to a gender roles, affecting her social and legal standing by the Official State and Federal Defendants who have a habitual dislike of her African American birthrights' United States of America existence.

   - **Unlawful Search and Seizure:** The Plaintiff constitutional rights under the Fourth Amendment have been violated through an unauthorized searches and seizures by the Official State and Federal Defendants without a legal warrants.

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non-Prisoner)

- **Physical Assault and Trespassing:** An unauthorized entry to damage the Plaintiff's apartment unit, 205 when a[n] fictitious, similar or identical named Defendants used those eminent domain duplicative North Dakota State-issued Real Identification Driver License card[s] for a public use to receive an unlawful copies of the Plaintiff's apartment unit, 205 and mailbox keys; in order to unlawfully entered into the Plaintiff's apartment unit, 205; and physical assaults the Plaintiff inside her apartment unit, 205 have placed her in continuous danger.

- **False Representations and Imminent Dangers:** The suspension, nullification, voidance and false representations of the Plaintiff's North Dakota State-issued Real Identification Driver License card[s] status have led to non-responsiveness from the local law enforcement agencies, placing the Plaintiff at further risk due to her North Dakota State-issued Real Identification Driver License card[s] had been unlawfully, intentionally, knowingly and willfully suspended, nullified, and voided by those Official State and Federal Defendants, and therefore, the Plaintiff does not exists, as a permanent North Dakota State citizen from the absence of the due process of the law.

**The Federal Defendants' actions have compounded these injuries by:**

- **Tampering with USPS Mails:** An unauthorized confiscations and redistributions of the Plaintiff's USPS mail have violated her Fourth Amendment rights and caused significant identity thefts, personal and professional disruptions problems in her life.

- **Thirteenth Amendment Violations:** A forced compulsory conditions of an involuntary servitude imposed on the Plaintiff due to the Federal Defendants' actions have deprived her constitutional rights to civil liberty.

These actions have caused an ongoing and immediate harm to the Plaintiff, which cannot be remedied through monetary compensation alone.

2. **Inadequacy of A Legal Remedies:**

Monetary damages are/were insufficient to a compensate for the extensive harm suffered by the Plaintiff. The nature of the injuries from a[n] identity thefts, ongoing gender-based discriminations, constitutional violations, and physical endangerments are/were necessitate a[n] immediate and comprehensive relief that can only be achieved through a permanent and/or declaratory injunctions. The ongoing risk to the Plaintiff's personal safety, constitutional rights, and identity cannot be adequately addressed through financial compensation alone.

3. **Balance of Hardships:**

The balance of a hardships strongly favors the Plaintiff. The Plaintiff continues to face significant threats to her safety, identity, and constitutional rights. The Official State and Federal Defendants, on the other hand, have no legitimate interest in continuing their unlawful actions towards the Plaintiff. The Plaintiff will hope. The harm faced by the Plaintiff far outweighs any potential inconvenience or burden that the Official State and Federal Defendants might claims. Granting a permanent and/or declaratory injunctions would prevent further violations of the

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non-Prisoner)

Plaintiff's rights without imposing an undue hardship on the Official State and Federal
Defendants.

### 4. Public Interest:

An issuing a permanent and/or declaratory injunctions would serve the public interest by
upholding the rule of law and protecting constitutional rights, preventing a[n] identity thefts,
unlawful searches and seizures, and color, sex, sexual orientation, ethnicity, age, religion,
disability, gender-based discriminations aligns with the principles of justice and civil rights.
Additionally, ensuring that public Official State and Federal Defendants operate within the
bounds of their authority promotes and regulates the States [Real ID] Driver License and States
Identifications cards online accounts transparencies and accountabilities, which will benefits
society as a whole.

Based on the arguments presented by the Plaintiff has demonstrated that she has suffered irreparable
injury to which a legal remedies are/were inadequate, that the balance of hardships favors her, and that a
permanent and/or declaratory injunctions would not harm public interest. Therefore, the Plaintiff
respectfully requests the Court to grant a permanent and/or declaratory injunctions; in order to prevent
further violations of the Plaintiff constitutional rights and to protect her from an ongoing and imminent
harms.

### Plaintiff's Claim for a Compensatory and Punitive Damages:

In the Matter of the Plaintiff's North Dakota Department of Transportation, Driver License[s] Division-
issued Real Identification License Card[s].

### Nature of a Claim:

The Plaintiff], hereby brings forth this claim against the Official State Defendants' North Dakota
Department of Transportation, Driver License[s] Division for seeking a compensatory and punitive
damages for an unlawful deprivation of property rights in connection with the suspension, nullification,
or voidance of the Plaintiff's North Dakota State-issued Real Identification Driver License Card[s] from
an absence of the due process of law.

### Statement of Facts:

1. The Plaintiff held a valid North Dakota Department of Transportation, Driver License Division-
   issued Real Identification License Card[s], which was suspended, nullified and voided for an
   approximately period of five years.

2. The Official State Defendants has/had suspended, nullified, or voided the Plaintiff's North Dakota
   State-issued Real Identification Driver License Card[s] for an eminent domain for a public use
   without just compensation, violating the Plaintiff's constitutional rights.

3. The Official State Defendants actions resulted in the deprivations of the Plaintiff's property rights
   without due process of the law.

4. The Official State Defendants' actions have caused the Plaintiff to suffer financial losses, distresses
   compounded by a gender-based systemic discriminations for which, manifesting in a pervasive

feelings of worthlessness, emotional distresses, anxieties, and severe depressions distresses, harassments, stalking, computer devices interferences, false personations, and inconveniences.

5. The Official State Defendants' actions are/were undertaken recklessly and with a willful disregard for Plaintiff's rights, warranting punitive damages.

**Legal Basis:**

1. The Official State and Federal Defendants' actions constitute a violations of the Plaintiff's Fifth Amendment rights under the United States Constitution, which prohibits the taking of private property for public use without just compensation.

2. The Official State and Federal Defendants' actions constitute a violations of the Plaintiff's Sixth Amendment rights under the United States Constitution, which guarantees rights to be informed of the nature and cause of the accusations and to be confronted with those witnesses.

3. The Official State and Federal Defendants' actions constitute a violations of the Plaintiff's Thirteenth Amendment rights under the United States Constitution, which prohibits an enforced compulsory conditions of an involuntary servitude upon the Plaintiff to which an unjustly restricting or curtailing her constitutional rights all stemming from the fictitious, similar and identical named Defendants' from a "Taking Clause" claims North Dakota State infringements, perpetrated by the Official State and Federal Defendants.

4. The Official State and Federal Defendants' actions constitute a violations of the Plaintiff's Fourteenth Amendment rights under the United States Constitution, which guarantees equal protection rights for the due process of law.

5. The Official State Defendants' actions constitute a violations of the Plaintiff's rights under the State of North Dakota Century Codes, Title 39 – Motor Vehicles, Operators' Licenses are as follows:

   - N.D. Cent. Code  § 39-06-32 for the Authority to Suspend Licenses,
   - N.D. Cent. Code  § 39-06-33 for the Hearings on Suspension or Revocation,
   - N.D. Cent. Code  § 39-06-34 for the Director May Require Re-Examination,

   which prohibits against any North Dakota Department of Transportation, Driver License[s] Division to suspense or revoked the Plaintiff's North Dakota State-issued Real Identification Driver License Car without legal notice of an intention to suspend by mailing the notice to the Plaintiff address of record in the department under section 39-09-20.

**Relief Sought:**

1. A compensatory damages in an amount to be determined at trial, maybe subject to the discretion of the Honorable Judge, but not less than the actual financial losses suffered by the Plaintiff, as a result of the Official State and Federal Defendants' actions.

2. A punitive damages in an amount to be determined at trial, maybe subject to the discretion of the Honorable Judge, to punish the Official State and Federal Defendants for its reckless and willful misconducts or wrongdoings did not acted in good faith in fulfilling their obligations and breached their contractual agreements of employments to a[n] enforce laws and regulations intended to

protect the integrity of the North Dakota State-issuance of the Department of Transportation (DOT) Driver License[s] Division's [Real] Identification Driver Licenses or State Identification Cards.

3. Any further relief that this Honorable Court deems just and proper.

## VIII.   Certification and Closing

Under the Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with requirements of Rule 11.

### A.  For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Signed this   27th   day of June, 2024.

_Signature of Plaintiff_

Sarai Hannah Ajai
Printed Name of the Plaintiff

2432 20th Avenue South, Apt 205
Mailing Address

Fargo, North Dakota, 58103
City, State, Zip Code

630-247-6195
Telephone Number of Plaintiff